[No. 34480.  Department Two.  September 18, 1958.]

JAMES E. PHILLIPS, *Respondent*, v. THELMA R. PHILLIPS, *Appellant*.[1]

[1]Reported in 329 P. (2d) 833.

*Russell B. Johnson* and *Theodore Delano Zylstra*, for appellant.

*Wilson & Chamberlin*, for respondent.

ROSELLINI, J.—On this appeal, we are asked to review an order modifying a decree of divorce, the contention being that the findings of fact do not support the conclusions of law, and that the court abused its discretion in making disposition of the matter.

The petition of the father set forth the remarriage of the mother and the ability of her present husband to support her and asked that alimony payments be discontinued. It was alleged in the petition that the mother, the appellant herein, had failed to co-operate in effecting the visitation privileges of the father, that she was unable to discipline the minor daughter in this regard, and that she planned to move to Idaho and take the child with her. For these reasons, a change of custody was asked. The father also asked that his obligation to pay taxes and insurance on the family home be discontinued, and that the monthly sum which he was required to pay for child support be reduced; however, we are not concerned with the disposition which the court made of these matters, as they are not complained of on appeal.

In answer to the petition, the mother denied that she had interfered with the exercise of visitation privileges, admitted her remarriage and her intention to reside for a part of the year on her husband's ranch in Idaho, and alleged that experiences which the child had had in the home of the father, where he resided with a new family, had made her progressively more reluctant to visit the father. For this reason, she alleged that the best welfare of the child would be served if the visits were to take place outside the father's home. She asked that the petition of the father be dismissed and that his visitation privileges be appropriately modified.

The father of the child, his father, and a psychiatrist who had visited in the father's home on occasions when the child was present, all testified that she seemed to enjoy her

visits and played amiably with the father's eleven-year-old stepson, Jimmy. On the other hand, the mother testified that the daughter complained that she was abused by the stepson and eventually threatened to run away if she should be required to visit in the father's home. She tried to persuade her to go by telling her that the court had ordered it and that if she didn't go, she, her mother, might be put in jail. Her testimony was that the child got along well with her stepfather and looked forward to the time spent on his ranch in Idaho.

The mother's sister, to whose home the court had previously decreed that the child should be taken on visitation days, to be called for there by her father, testified that the child was usually obedient and went with her father without protest on the first two weekend visits provided for in this previous order. However, that she was very much upset when she appeared for the third visit, and the father finally had to carry her to the car. Since that occasion, she said, the child had failed to appear at her home on visitation days.

A psychiatrist who had interviewed the child on two occasions, at the request of her physician, testified that she was a normal child and was suffering from no psychotic condition; but he stated that psychosis might develop unless certain apprehensions which she exhibited about her situation were allayed. When asked whether these apprehensions might have been produced by her mother's attitude toward her father, he answered that, while either parent might influence a child in its apprehensions, in this case it appeared that the child's apprehensions were directed, not toward either of her parents, but toward her situation. He stated that the child manifested love for her father, and that she was apparently disturbed, not so much by the fact or necessity of the visits but by the manner in which they were carried out.

In so far as material to this appeal, the court found that the mother's new husband was financially capable of supporting her; and that the mother and her husband intended to reside in Idaho, necessitating a change in visitation priv-

ileges; that the child was not psychotic or emotionally disturbed but that tensions existing between the parents might lead to psychosis.

There was also a finding that the matter of a permanent change of custody of the child should be continued for a period of six months for final determination, with the final decision to be based partially upon the co-operation of the mother during the interim.

The court reduced by one half the alimony payments called for by the original decree and modified the father's visitation privileges, providing that instead of having the child with him for one month during the summer, he should have her except for two weeks for the entire summer vacation, during which time the child was periodically to visit a child psychiatrist; that his right to have her visit him on alternate weekends during the remainder of the year should be discontinued during such times as she was living in Idaho; and that he should have her during Christmas vacation in one year and Thanksgiving and Easter vacation the next. It is urged that the court abused its discretion in thus modifying the decree.

The appellant assigns error to the court's reduction of the alimony; while the respondent urges that this court should discontinue all alimony.

■ The reduction in alimony was justified inasmuch as the mother had married a man well able to support her and all of the provisions of the original decree were made subject to modification. There is in the original decree and in the findings which support it nothing to substantiate appellant's theory that the alimony award was made in lieu of the property settlement.

The decree provided that the mother should be responsible for taking the child to Port Angeles where the respondent resided, and that the father had the duty to return the child to the mother's place of residence; that the transportation costs from the child's place of residence to Port Angeles, Washington, and return should be borne half by the respondent father and half by the appellant mother.

The record discloses that the appellant expressed a desire to remain with her child in Washington; however, it was understood that she would return to Idaho to live with her husband and that the child would be with her except at such times as respondent had the right of custody.

The trial court when signing the decree stated that the reduced alimony for one hundred dollars per month was for the purpose of the parents' sharing in the cost of the child's transportation. It was the thinking of the trial court that this arrangement would contribute to a greater degree of harmony in the observance of visitation rights as provided in the decree. The trial court under the circumstances was justified in modifying the allowance.

The modification relative to visiting privileges of the father is also complained of as an abuse of discretion. The appellant points to the child's obvious reluctance to visit in the home of the father, the good relationship existing between her and her mother and stepfather, and her eagerness to go to the ranch in Idaho as reasons why her welfare would not be served by requiring her to spend the summer in her father's home. The findings do not reveal the court's reason for increasing the summer visitation period, but it is apparent from reading the comments made at the conclusion of the hearing that the court felt that the child's reluctance to visit the father was largely inspired by the mother's attitude, or at least was not discouraged by her. It was evidently the belief of the court that if the child were to spend a substantial period of time in the father's home, the influence of the mother in this regard might be counteracted. We cannot say that the solution which the court arrived at for the father's visitation problem constituted a patent abuse of discretion, especially since there was a further provision that the child should be under observation by a psychiatrist during the summer vacation visitation period; and if the extended visitation (which was to occur during the continuance) should prove to be harmful rather than beneficial to the child's welfare, an appropriate modification could be made.

■■ It is argued that the court was without authority to continue the hearing until six months after the date of the order, because, under Art. IV, § 20, of the state constitution, the court was required to render its decision within three months after the matter was submitted. In that provision, an exception is made where a rehearing is ordered, and this court has expressly approved such continuances in custody matters where the trial court, in its sound discretion, deems it wise to postpone final determination until after a trial period during which the effectiveness and propriety of its temporary order can be observed. *Potter v. Potter*, 46 Wn. (2d) 526, 282 P. (2d) 1052; and, see *Allen v. Allen*, 28 Wn. (2d) 219, 182 P. (2d) 23. In any event, the constitutional requirement does not lessen the jurisdiction of the court or render void a decision made beyond the ninety-day period. *State v. Dooly*, 14 Wn. (2d) 459, 128 P. (2d) 486; *In re Cress*, 13 Wn. (2d) 7, 123 P. (2d) 767; *Demaris v. Barker*, 33 Wash. 200, 74 Pac. 362.

■ Lastly, the court is asked to increase the attorneys' fees which were awarded the appellant. The appellant's attorneys were given an opportunity to apprise the court of the amount of time and effort expended in behalf of their client, and the award was made on the basis of the minimum bar schedule for the time which they reported to the court. We cannot say that the amount allowed was so unreasonably low as to manifest an abuse of discretion.

Since no permanent change was made in the custody of the child, we are not called upon to consider whether the evidence presented would support a modification in this regard.

The order is affirmed.

HILL, C. J., DONWORTH, WEAVER, and FOSTER, JJ., concur.