[Nos. 47316–1, 47397–8.   En Banc.   October 8, 1981.]

*In the Matter of the Marriage of* MARY J. LITTLE,
*Petitioner, and* RALPH E. LITTLE,
*Respondent.*

*In the Matter of the Marriage of* NANCY ZINTER,
*Respondent, and* RONALD S. ZINTER,
*Petitioner.*

184

*Keith H. Campbell,* for petitioner Little.

*Clifford F. Curtis,* for petitioner Zinter.

*Allen L. Schwenker II* and *Dean, Schwenker & Keane,* for respondent Little.

*William T. Lawrie* (of *Ordell, Lawrie & Brown*), for respondent Zinter.

*Kenneth W. Weber, Marlene N. Hansen,* and *Margaret Gaskill Sandelin,* amici curiae.

ROSELLINI, J.—These consolidated appeals involve the question: Does RCW 26.09 authorize the entry of a decree of dissolution, prior to consideration and resolution of issues relating to child custody, visitation, support, maintenance, and the division of property and debts?

In 1979, the Superior Court for Spokane County, in In re Marriage of Little, entered a decree of dissolution. At the same time, it made a partial distribution of property and a temporary custody order, with support and visitation provisions. It reserved the final determination of these matters for a period of 6 months. The reason for the deferral was that the mother planned to remarry and move to Washington, D.C., where she expected to establish a home in which she could care for the two younger children, then aged 3 and 5. The two older children of the parties, aged 16 and 17, preferred to remain in the Spokane area with their father, and she had agreed to that arrangement.

The trial court concluded that the best interests of the younger children would be served by postponing the final custody decision for a period of 6 months, so that the mother could be given an opportunity to establish a new home for them, and their father's success in caring for them, while working full time, could be observed.

No appeal was attempted from this decree. The mother remarried, as she had told the court she planned to do. Among the witnesses testifying at the second hearing were professionals who had investigated the circumstances of the children and their parents. While both parents were found to be fit persons to have the care of the younger children, the court determined that it would be in the best interests of those children to live with their mother and new stepfather, paying particular attention to the fact that the father was forced to leave them during the day in the care of a series of housekeepers. A housekeeper, the court observed, is no substitute for a mother. The court found that there

was no compelling reason not to separate the younger children from their older brother and sister, since the latter were nearing the age of emancipation. The remaining property, visitation and support issues were resolved in the court's supplemental decree.

The father appealed, contending that the court had abused its discretion in removing the younger children from his home. No error was assigned to the ruling deferring resolution of the custody and other issues for a period of 6 months after the decree of dissolution was entered.

The Court of Appeals, Division Three, stayed the order for change of custody of the younger children pending the appeal. A majority of the court held, sua sponte, that the lower court was without authority to defer final resolution of the question of custody for a period of time after entry of the decree of dissolution, and had abused its discretion in entering a custody order which separated the younger children from their siblings and other relatives living in the Spokane area. Reversing the supplemental decree, the court held that all of the children should remain with their father.

In the case of In re Marriage of Zinter, the petitioner in the trial court, Nancy C. Zinter, requested entry of a decree dissolving the marriage and reserving all other issues for trial. The respondent resisted this motion and it was denied. In this case there were no children involved, and the questions which might be reserved concerned only distribution of the property and liabilities and possible maintenance.

In an unpublished opinion, a panel of the Court of Appeals, Division One, reversed that denial, citing *In re Marriage of Hermsen,* 27 Wn. App. 318, 617 P.2d 462 (1980), a case upon which no petition for review was sought. The appellate court in that case had found in the dissolution act (RCW 26.09) a legislative policy favoring prompt termination of unworkable marriages. This conclusion

rested upon the court's interpretation of RCW 26.09.030,[1] which gives residents of this state a right to a dissolution decree 90 days after the petition is filed and summons served if the parties file jointly or there is no denial that the marriage is irretrievably broken. Where one party denies that the marriage is irretrievably broken, RCW 26.09.030(3)(b) authorizes the court to delay the decree for no more than 60 days for counseling. This law effected a significant change from the prior statute, which had authorized the entry of a decree irrespective of fault only if the parties had been living separate and apart for at least 2 consecutive years. RCW 26.08.020(9), Laws of 1965, 1st Ex. Sess., ch. 15, p. 1699; repealed, Laws of 1973, 1st Ex. Sess.,

---

[1] "When a party who is a resident of this state or who is a member of the armed forces and is stationed in this state, petitions for a dissolution of marriage, and alleges that the marriage is irretrievably broken and when ninety days have elapsed since the petition was filed and from the date when service of summons was made upon the respondent or the first publication of summons was made, the court shall proceed as follows:

"(1) If the other party joins in the petition or does not deny that the marriage is irretrievably broken, the court shall enter a decree of dissolution.

"(2) If the other party alleges that the petitioner was induced to file the petition by fraud, or coercion, the court shall make a finding as to that allegation and, if it so finds shall dismiss the petition.

"(3) If the other party denies that the marriage is irretrievably broken the court shall consider all relevant factors, including the circumstances that gave rise to the filing of the petition and the prospects for reconciliation and shall:

"(a) Make a finding that the marriage is irretrievably broken and enter a decree of dissolution of the marriage; or

"(b) At the request of either party or on its own motion, transfer the cause to the family court, refer them to another counseling service of their choice, and request a report back from the counseling service within sixty days, or continue the matter for not more than sixty days for hearing. If the cause is returned from the family court or at the adjourned hearing, the court shall:

"(i) Find that the parties have agreed to reconciliation and dismiss the petition; or

"(ii) Find that the parties have not been reconciled, and that either party continues to allege that the marriage is irretrievably broken. When such facts are found, the court shall enter a decree of dissolution of the marriage.

"(4) If the petitioner requests the court to decree legal separation in lieu of dissolution, the court shall enter the decree in that form unless the other party objects and petitions for a decree of dissolution or declaration of invalidity." RCW 26.09.030.

ch. 157, § 30.

The Court of Appeals in *Hermsen* did not find in RCW 26.09.050 any manifestation of a legislative intent that ancillary matters be disposed of at the time the decree of dissolution is entered, although that section provides:

> In entering a decree of dissolution of marriage, legal separation, or declaration of invalidity, the court shall consider, approve, or make provision for child custody and visitation, the support of any child of the marriage entitled to support, the maintenance of either spouse, and the disposition of property and liabilities of the parties.

RCW 26.09.050.

As the appellate court read this section, it requires a trial court to "consider" these matters, but permits it to limit that consideration to the question whether further consideration of the matters should be postponed.

We are in agreement with the Court of Appeals in *Hermsen* that the 1973 act embodies significant changes in the law of marriage dissolution. Obviously the element of fault is removed from the action. This evidences a legislative recognition of the strife, vindictiveness, and bitterness which proof of that element engendered, to no useful or desirable purpose. Further, like the *Hermsen* court, we find in the cited section of the act expression of a legislative intent to hasten the day when a dissolution can be effected, where a marriage is in fact defunct. This end is achieved by eliminating the 2-year waiting period required under the former act.

However, we do not think the legislature intended to abandon entirely its former solicitude for the preservation of the marital relationship. A decree cannot be obtained immediately, once a decision has been made to seek it. As under the previous statutes, there is a "cooling off" period—a time for reconsideration. This is the same 90-day delay required under the previous statute (Laws of 1949, ch. 215, § 4, p. 699). There is an additional 60-day delay provided where counseling is ordered. RCW 26.09.030(3)(b).

At the end of the prescribed period, the party or parties become entitled to a decree. Presumably, if the parties have entered into a separation agreement as provided for and encouraged in RCW 26.09.070, the decree can be granted promptly, since the court has only a minimal role to play in settling the matter. However, if the parties have not reached agreement and a trial is required, it is more than likely that a further delay will be necessary, both for trial preparation and the obtaining of a trial date. Does the act give the court the authority to enter a decree of dissolution, deferring resolution of ancillary questions (bifurcating the trial), over the objection of one of the parties? Unlike the Court of Appeals in *Hermsen*, we cannot find that intent expressed in the statute.

The entire sequence of statutes enacted by the same legislative authority, relating to the same subject matter, should be considered in placing a judicial construction upon any one of the acts. *State ex rel. Wash. Mut. Sav. Bank v. Bellingham,* 183 Wash. 415, 48 P.2d 609 (1935). There, this court had before it for construction statutes enacted in 1925 and 1927. It examined prior enactments on the same subject and found a continuity in policy (protecting the investments of municipal bond holders) which enabled it to resolve the ambiguity in the current statutes in accord with that policy. Other cases enunciating the principle that, in construing a legislative enactment, the entire sequence of all enactments should be examined to ascertain the legislative policy and intent, include *Connick v. Chehalis,* 53 Wn.2d 288, 333 P.2d 647 (1958); *State ex rel. Chesterley v. Superior Court,* 19 Wn.2d 791, 144 P.2d 916 (1944); *Longview Co. v. Lynn,* 6 Wn.2d 507, 108 P.2d 365 (1940) (holding that not only prior but subsequent statutes may be considered for this purpose); and *Amburn v. Daly,* 81 Wn.2d 241, 501 P.2d 178 (1972). This rule can also be found in 2A C. Sands, *Statutory Construction* § 56.02 (4th ed. 1973).

It is also the rule that the legislature is presumed to be aware of its past legislation and judicial interpretations

thereof. *Bixler v. Bowman,* 94 Wn.2d 146, 614 P.2d 1290 (1980); *State v. Fenter,* 89 Wn.2d 57, 569 P.2d 67 (1977). The act, read as a whole and viewed in relation to past legislation, fails to disclose an intent to inaugurate a new policy authorizing bifurcation.

Prior to the enactment of Laws of 1973, 1st Ex. Sess., ch. 157 (the present dissolution statute), provision for the entry of a divorce decree was contained in RCW 26.08.110 (Laws of 1949, ch. 215, § 11, p. 701). That section required the court to enter judgment in accordance with its findings of fact, at the conclusion of a divorce trial, and to make provision for property distribution, maintenance, and child custody and support. This court held in *Shaffer v. Shaffer,* 43 Wn.2d 629, 630, 262 P.2d 763 (1953), that the statute established the duty of the trial court to dispose of all of the property of the parties which was brought to its attention in the trial of the action and that the parties had the right to have their respective interests in their property after they were divorced, definitely and finally determined in the decree which divorced them. This interpretation was repeated in *Bernier v. Bernier,* 44 Wn.2d 447, 267 P.2d 1066 (1954).

While the court was required to make its final ruling with respect to property disposition at the time of the decree, we had recognized an equitable power to make a temporary order with respect to child custody, at the time of entering the decree of divorce, where the welfare of the child made postponement of a final decision desirable. *Potter v. Potter,* 46 Wn.2d 526, 282 P.2d 1052 (1955). We have also recognized the right of the superior court in entering a modification order to defer final determination on custody questions until after a trial period during which the effectiveness and propriety of its temporary order can be observed. *Phillips v. Phillips,* 52 Wn.2d 879, 884, 329 P.2d 833 (1958); *Allen v. Allen,* 28 Wn.2d 219, 182 P.2d 23 (1947).

Thus, before the enactment of the dissolution act of 1973, it was the established legislative policy, as construed by this court, to require the court to rule upon all issues

within its jurisdiction at the time of entering a decree of divorce, although a final determination with respect to custody might be postponed.[2] If it was the intent of the legislature to change that policy, we do not find that intent expressed in the act.

It is true that RCW 26.09.030 sets forth certain conditions precedent to the entry of a decree of dissolution, and that resolution of property, custody, maintenance and support matters is not among them. However, the act must be read as a whole, and its parts harmonized. RCW 26.09.050 requires the court "[i]n entering a decree of dissolution" to "consider, approve, or make provision for" ancillary matters. The language of this provision was taken from the 1970 draft of the Uniform Marriage and Divorce Act.[3] *See* 9A U.L.A. § 302 (Master ed. 1979).

The Court of Appeals in *Hermsen* found in the word "consider" authority to bifurcate the issues of custody, support, maintenance, and property and liability distribution. As that court read the provision, it does not require a disposition of these issues at the time of entry of the decree. However, if this were the intent, a significant change in legislative policy was entailed, and it is not to be assumed that the legislature would effect such a change by mere implication.

The interpretation placed upon the word "consider" by the committee which drafted the section in the uniform act differed from that of the *Hermsen* court. It commented:

The phrase, "considered, approved, or provided for," in subsection (a) (4) is intended to confer upon the court the authority to refuse to make any award, if the evidence justifies an outright denial, as well as the authority

---

[2]All custody decrees are subject to modification, of course, and we use the word "final" here to denote a decree which cannot be modified without showing a change in circumstances. *See* RCW 26.09.260; prior, Laws of 1949, ch. 215, § 12, p. 702; *Barstad v. Barstad,* 74 Wn.2d 295, 444 P.2d 691 (1968).

[3]The 1974 draft (section 302(a)(4)) expressly authorizes the court to provide for a separate hearing to complete these matters. *See* Editors of Fam. L. Rep., *Desk Guide to Uniform Marriage and Divorce Act* § 302 (1974).

to make such allotment as the facts require.

Editors of Fam. L. Rep., *Desk Guide to Uniform Marriage and Divorce Act* § 302, Comment at 22 (1974).

Professor Luvern Rieke's interpretation is as follows:

> The words "consider, approve, or make" reflect the fact that maintenance may not always be appropriate but may be "considered"; that a separation contract may be "approved"; and that disposition of property and obligations shall, when jurisdiction to do so exists, be "made".

Rieke, *The Dissolution Act of 1973: From Status to Contract?*, 49 Wash. L. Rev. 375, 399 n.101 (1974). He finds no difficulty in construing the act to require that ancillary relief be awarded at the same time that the status decree is entered, save for exceptional situations. The "exceptional situations" are discussed at pages 401–03 of his article. They occur where the court subsequently acquires personal jurisdiction over one of the parties or jurisdiction over their property. *See* RCW 26.09.080, .090.

Counsel, including amicus curiae, have brought to our attention considerable background material exploring the considerations which prompted the revision of the divorce laws in this state, as well as the provisions of the uniform act. Bifurcation of the dissolution decree and ancillary relief does not appear to be one of them. The objectives of the revision are apparent in the act itself. We need not list all of them here. Suffice it to say that with respect to dissolution of a marriage, the most significant is the rejection of fault as an element. RCW 26.09.030. Absent fraud, or coercion, the allegation that the marriage is irretrievably broken is all that is required to support a decree of dissolution, and the judge has no function in evaluating the evidence with respect to its grounds.

Another important change is in the role of the court in approving separation agreements. Under the prior law, such an agreement was to be adopted only if its terms were deemed fair and equitable by the judge. *See State ex rel. Atkins v. Superior Court*, 1 Wn.2d 677, 97 P.2d 139 (1939); *Lee v. Lee*, 27 Wn.2d 389, 178 P.2d 296 (1947). Under the

new law, amicable agreements are preferred to adversarial resolution of property and maintenance questions, as well as those of child custody and support, and the separation contract is binding upon the court unless it finds that the contract was unfair at the time of its execution. RCW 26.09.070(3).[4]

None of these changes involves bifurcation of the trial with respect to dissolution and ancillary relief. There is no material change in the wording of the old statute and the new, as it pertains to the time of entering the decree and ancillary relief. It is true that, under the prior act, the requirement that the court enter its decree of divorce and make property distribution and provision for other ancillary relief was contained in one section, while under the 1973 act these matters are dealt with in separate sections. Nevertheless, RCW 26.09.050 is explicit in requiring the court to take action on ancillary provisions at the time that it enters a decree of divorce. There are provisions for temporary orders prior to entry of "the final decree" (RCW 26.09.060), but there is no provision in the act authorizing a postponement of the hearing on these matters.

Other provisions of the 1973 act are consistent with an intent to require disposition of ancillary matters at the time of granting the dissolution decree. RCW 26.09.080 authorizes a "proceeding for disposition of property following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of the property". Implicit in this language is an understanding that, if the court has jurisdiction over the parties and the property, it will dispose of the property when it dissolves the marriage. RCW 26.09.070(5), pertaining to separation contracts, provides that "[u]nless the separation contract provides to the contrary, the [approved]

---

[4]It is likely that this provision inspired the unusual language chosen to define the duty of the court with respect to ancillary matters in RCW 26.09.050. It was evidently contemplated that in most cases the court would have before it such a separation agreement for consideration and approval, or, if it found it unfair at its inception, the making of other provisions for these matters.

agreement shall be set forth in the decree of dissolution". This provision obviously contemplates that the separation contract will be acted upon at the time the decree of dissolution is entered. And RCW 26.09.150 provides:

> A decree of dissolution of marriage, legal separation, or declaration of invalidity is final when entered, subject to the right of appeal. An appeal which does not challenge the finding that the marriage is irretrievably broken or was invalid, does not delay the finality of the dissolution or declaration of invalidity and either party may remarry pending such an appeal.

Again, the legislative intent that ancillary matters shall be ruled upon at the time of entering the decree of dissolution is manifest.

▮▮ Finding in the act no expression of an intent to change the existing law regarding the superior court's power in disposing of ancillary matters in a marriage dissolution proceeding, and the language of the new act being consistent with past policy, we presume that it intended to continue the policy expressed in the prior statute as construed by this court. Under that policy, it is the duty of the superior court to rule upon ancillary matters at the time it enters the decree. A party to a marriage dissolution has the right to have his interest in the property of the parties definitely and finally determined in the decree which dissolves the marriage. *Shaffer v. Shaffer,* 43 Wn.2d 629, 262 P.2d 763 (1953); *Bernier v. Bernier,* 44 Wn.2d 447, 267 P.2d 1066 (1954). The court may enter a temporary custody order, retaining jurisdiction to modify the order at a specified date, where the best interests of the child require such action. *Phillips v. Phillips,* 52 Wn.2d 879, 329 P.2d 833 (1958); *Potter v. Potter,* 46 Wn.2d 526, 282 P.2d 1052 (1955).

The legislature has authorized the entry of a decree of dissolution at the end of 90 days (or 150 days if counseling is requested) after service of summons.[5] This result cannot

---

[5] It is argued here that the legislature has mandated the entry of a decree at the end of the specified time, because the statute declares that, when the statu-

be achieved, we are told, if a trial date is not available at that time, and because of crowded calendars, a delay of 2 years or more may be entailed. Such a delay is undoubtedly frustrating to parties whose marriage is in fact ended. On the other hand, we are told that there are a number of vexatious problems with respect to property ownership and management which may arise if the property is not distributed in the decree. We appreciate the objections that attach to either resolution of the dilemma. However, the question is one of legislative policy, and relief must be sought from that body.

The legislature was not inattentive to the problems of delay. It was evidently contemplated that, with the liberalized provisions for separation agreements, and the diminished role of the courts where such agreements are effected, the need for lengthy trials would be substantially reduced. Furthermore, custody proceedings are given priority status under RCW 26.09.230. If further changes in the law are necessary and desirable to expedite the termination of unwanted marriages, they must come from the legislature.

Some of the briefs before this court proceed upon the apparent assumption that the failure of a lower court to decide the custody and property issues at the time it enters the decree of dissolution renders the judgment void. However, no authority is offered for that proposition, and we do not perceive a valid basis for it. A judgment is void only if the court lacks jurisdiction.

The Illinois Appellate Court for the Second District, in *In re Marriage of Cohn*, 94 Ill. App. 3d 732, 419 N.E.2d 729 (1981), construed that state's dissolution act, which adopted the language of a later version of section 302(a)(4)

---

tory prerequisites are met, the court shall enter a decree of dissolution. We are satisfied that such a rigid and impractical requirement was not intended. The use of the phrase "shall enter a decree" serves to make it clear that the court no longer has a discretionary role to play in deciding whether a decree should be granted. It would be awkward to construe it as a mandate to enter a decree at a time when the parties are not ready to present their evidence, or when there is no judge available to try the case.

of the Uniform Marriage and Divorce Act, to require resolution of all issues in the same decree. That court held that a dissolution decree, entered while deferring resolution of ancillary issues, was "without statutory authority and was therefore void." However, it soon appeared that this holding threatened the validity of many remarriages in Illinois, and a petition for rehearing was granted. In its revised opinion, filed April 20, 1981, the Illinois court stated, at page 740:

> While the prerequisites to a judgment of dissolution set forth in section 401(3) [Ill. Ann. Stat. ch. 40] are mandatory, not discretionary, these provisions do not operate to limit the subject matter jurisdiction of the trial court. . . . Although the provisions of section 401(3) are mandatory, they do not present a jurisdictional requirement in the sense they cannot be waived . . .

The court found no waiver in the case before it.

This court has held that, even though Const. art. 4, § 20 requires a superior court to render its decision within 3 months after the matter was submitted, the court does not lose jurisdiction by failing to do so, and a decision rendered after that date is not void. *Phillips v. Phillips,* 52 Wn.2d 879, 329 P.2d 833 (1958); *State v. Dooly,* 14 Wn.2d 459, 128 P.2d 486 (1942); *In re Cress,* 13 Wn.2d 7, 123 P.2d 767 (1942). In the latter case (quoting from *Bickford v. Eschbach,* 167 Wash. 357, 9 P.2d 376 (1932)), we said that

> "The superior court is a court of general jurisdiction, and a judge of that court may render a judgment at any time except as the law may forbid him. Nothing in the constitutional provision requiring a decision within ninety days forbids a decision at any other time or lessens the jurisdiction of the judge of the superior court."

*Cress,* at 10–11.

If a constitutional provision requiring a decision within a specified time does not invalidate a decision rendered later, a fortiori, a statute requiring a decision at a specified time does not do so.

*See also Bjurstrom v. Campbell,* 27 Wn. App. 449, 618 P.2d 533 (1980), where the Court of Appeals, Division

Three, held that a delay of 8 years in entering a judgment was not a proper ground for vacation of the judgment, no appeal having been taken.

■ There are in general three jurisdictional elements in every valid judgment, namely, jurisdiction of the subject matter, jurisdiction of the person, and the power or authority to render the particular judgment. 1 A. Freeman, *Judgments* § 226 (5th ed. rev. 1925).

Divorce is a statutory proceeding, and the jurisdiction and authority of the courts are prescribed by the applicable statute, which is to be broadly construed. Accordingly, a court in a divorce proceeding cannot compel a liquidation of a community asset for the benefit of creditors. *Arneson v. Arneson*, 38 Wn.2d 99, 227 P.2d 1016 (1951). We have held that it cannot provide for the custody of a child who is not the child of the parties. *Palmer v. Palmer*, 42 Wn.2d 715, 258 P.2d 475 (1953); *but see Eickerman v. Eickerman*, 42 Wn.2d 165, 253 P.2d 962 (1953). Under the prior statute, this court could not award a divorce in an action commenced by a nonresident plaintiff. *Hargreaves v. Hargreaves*, 55 Wn.2d 856, 350 P.2d 867 (1960). It cannot award a divorce to one who has not resided in the state for the requisite period of time. *Tupper v. Tupper*, 63 Wn.2d 585, 388 P.2d 225 (1964). It will be seen that these restrictions all pertain to jurisdiction, either over the person or the subject matter involved. We have found no case holding that trial procedural requirements, such as the time for deciding issues, are jurisdictional.

■ Failure to settle ancillary matters at the time the decree of dissolution is rendered does not deprive the court of jurisdiction over the parties, or the subject matter, or of the power to render a decree of dissolution.

It follows that our holding with respect to the court's duty to rule upon all ancillary questions at the time it enters a decree of divorce does not affect the validity of decrees which have previously been entered and from which no appeal has been taken. In such cases, the right to have all the issues decided at once has been waived, the failure

to rule upon such issues having been but a procedural error and not a jurisdictional defect.

Applying the statutory requirements, as we construe them, to the cases before us, we hold that the Superior Court in In re Marriage of Little acted within its powers when it entered a temporary order respecting child custody, retaining jurisdiction to modify that order at the end of 6 months if the mother was able to provide a stable and suitable home at that time.

Furthermore, any objection to that procedure was waived by a failure to object or to raise the question on appeal.

We have also studied the briefs filed on the appeal of the supplemental decree, as well as the evidence submitted to the trial court, and find there is substantial evidence to support the lower court's conclusion that the best welfare of the younger children would be served by awarding their custody to the mother. However, the same objective as that which guided the trial court in that determination requires that we remand the case for its reconsideration of the custody order, in the light of present circumstances. Due to the Court of Appeals having stayed the trial court's order for change of custody, the children have presumably remained in Spokane during the pendency of these appeals. In order to insure that their best interests are served, the trial court should look into the present circumstances of the children and their parents before enforcing its supplemental decree.

The decision of the Court of Appeals, Division Three, in *In re Marriage of Little,* 26 Wn. App. 814, 614 P.2d 240 (1980), is reversed, and the cause is remanded to the trial court for further proceedings.

In the case of Zinter, as we have mentioned earlier, there is no custody question involved. Under the rule of *Shaffer v. Shaffer, supra,* and *Bernier v. Bernier, supra,* the respondent in that case had a right to have his property interests determined at the time the decree of dissolution was entered. That right was timely asserted, and the Superior Court did not err in refusing to bifurcate the trial. The decision of the Court of Appeals, Division One (*In re Mar-*

*riage of Zinter,* 27 Wn. App. 1014 (1980)), setting aside that judgment, is accordingly reversed, and the cause is remanded to the trial court for further proceedings.

STAFFORD, DOLLIVER, WILLIAMS, and DORE, JJ., concur.

DIMMICK, J. (concurring in part, dissenting in part)—I concur with the result the majority reached in the matter of the marriage of Mary Jane and Ralph E. Little. I dissent from the result the majority reached in the matter of Nancy C. and Ronald S. Zinter.

The majority in this case has held that failure to settle ancillary matters at the time the decree of dissolution is rendered does not deprive the court of jurisdiction over the parties, or the subject matter, or of the power to render a decree of dissolution. The validity of decrees which have previously been entered is not affected, as only a procedural error was made which may be waived. Majority, at 197–98. It necessarily follows that the parties may also waive that procedural requirement in the future. If this be the case, I see no reason not to treat all petitioners the same and allow each one to present to the court reasons why it is desirable for their decree to be entered while reserving such matters as property distribution to a later time. The majority holds this cannot be done over the objection of one of the parties.

I respectfully disagree and maintain the plain language of the present statute allows this result. The majority based its decision on case law construing a prior statute. The holding in *State v. Bird,* 95 Wn.2d 83, 622 P.2d 1262 (1980) substantiates my position that in the absence of language *to the contrary* the courts have authority to take discretionary action. *Bird,* at 89.

The present statute, RCW 26.09.030, provides that "when ninety days have elapsed" and if the parties agree "the marriage is irretrievably broken" (as is the case before us), "the court *shall* enter a decree of dissolution." (Italics mine.) Disposition of property is not a condition precedent. RCW 26.09.050 provides that "the court shall *consider . . .*

disposition of property" (italics mine) in entering a decree. It would appear the court can *consider* and decide to delay ancillary proceedings in its discretion.

The reasons for granting bifurcated decrees to agreeing parties remains the same for any petitioner; that is, permitting the parties to file tax returns as single individuals, terminating property rights under a community property agreement, clarifying the legal status of the parties in dealing with debtors and creditors, allowing the parties to acquire property and rebuild their lives independent of each other and permitting the parties to remarry. Therefore, when, as here, a respondent resists the entry of such a decree, that party should come forward with some reason. I opine the court has the discretion to *consider* the reasons advanced by the nonagreeing party to see if merit for the delay exists, or if vindictiveness or possible property settlement advantage is really the basis.

Obviously, there may be cases where the court may wish to decide all ancillary matters at one time and it clearly has that authority, in which case an early trial date should be set. In most counties, dissolution matters can be heard within a reasonable time after the 90 days, so there would be no reason for two court appearances as would be required by bifurcation. However, in King County, the Zinter matter had been set for trial almost 2 years after the filing and after both parties had indicated the marriage was irretrievably broken. Such a delay is not within the contemplation of the legislative intent for no–fault speedy termination of marriages.

Likewise, the contention that dire consequences would result if all matters were not decided at one time overlooks the fact that since the act was passed in 1973, various courts have been following the procedure of bifurcation and not one example has been cited to this court that justifies that ominous prediction.

Since *In re Marriage of Hermsen,* 27 Wn. App. 318, 617 P.2d 462 (1980), was decided, the King County Superior Court has set out uniform discretionary procedure for

bifurcation and, likewise, none of the parties have cited one instance of a disastrous result. This approach is practical. When the stress of drawn–out court proceedings is relieved by entry of the decree, the result may well be an amicable property settlement agreement, which was also contemplated by the statute. RCW 26.09.070.

I would affirm the Court of Appeals and remand the matter to the trial court for the exercise of its discretion.

BRACHTENBACH, C.J., and UTTER and HICKS, JJ., concur with DIMMICK, J.