IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

In the Matter of the Marriage of )   No. 72963-2-I
CHANDLER H. RIKER, )
 )
        Respondent, )
 )   UNPUBLISHED OPINION
    and )
 )
MONIQUE HETRICK RIKER, )
 )
        Appellant. )   FILED: July 18, 2016

SCHINDLER, J. — Monique Hetrick Riker appeals entry of the final parenting plan

designating Chandler H. Riker as the residential parent. At the conclusion of the trial on

August 11, 2014, the court found Monique engaged in conduct that created the danger

of serious psychological damage and had an adverse effect on the best interests of the

children.[1] Nonetheless, the court agreed to designate Monique as the residential parent

"at least initially," but the decision was subject to compliance with mandatory

requirements under RCW 26.09.191(3). The court entered a parenting plan and

retained jurisdiction. Four months later, the court found Monique did not comply with

the requirements and entered the final parenting plan designating Chandler as the

residential parent. Monique claims the trial court did not have the authority to change

---

[1] We refer to the parties by their first names for purposes of clarity and mean no disrespect by
doing so.

designation of the residential parent for violation of the conditions imposed under RCW 26.09.191(3) without compliance with the statutory requirements for modification of a parenting plan under RCW 26.09.260. We disagree, and affirm.

## FACTS

Monique and Chandler married in August 1999. In 2007, Monique gave birth to a daughter. In 2009, Monique agreed to move with Chandler to the east coast for his work. At the time, Monique was pregnant with twins. Chandler moved to the east coast before the birth of the twins in October 2009. Monique decided not to move back east and remained in Washington with the children.

At some point in 2011, Monique and Chandler separated. Chandler filed a petition for dissolution of the marriage and entry of a parenting plan. The record for these proceedings is scant. Monique has designated only the trial brief filed by Chandler, the court's oral ruling, and the parenting plan entered after the August 2014 trial.

In his trial brief, Chandler states the court should designate Monique as the residential parent subject to "restrictions/requirements." Chandler alleged Monique "engaged in severe parental alienation" and refused to allow him to play "an active part" in the life of his children.

In the oral ruling at the conclusion of trial, the court awarded Monique all proceeds from the sale of the family home and $45,000 for her portion of a 401K retirement fund.

The court found that in the previous year, Monique and her family had "made every effort" to alienate the children.

> What is really clear though is that in the last year, [Monique] and her family have made every effort to try and alienate the children from Mr. Riker. And that's been a real problem because she's, you know, first cut off the face time,[2] then cut off all contact, then forced all of the things that have gone on since then.

The court found Monique's mother has been "in a practically delusional state in dealing with this. . . . [R]eferring to the idea of the girls going with their father for two weeks as 'the horrific event.' "

> The court found Monique engaged in abusive use of conflict by

> bringing false claims of stalking, harassment, refusing to show up or provide the children when that was supposed to be done, filing at the last minute for a protection order just because [she was] unhappy with a visitation provision that's coming up.

The court ruled that "[i]n spite of all that," it would "adopt, at least initially, [Chandler]'s proposed parenting plan" designating Monique as the residential parent.[3] The court ruled that the decision to designate Monique as the residential parent was subject to compliance with conditions designed to address the adverse and harmful effect of Monique's conduct on the children. The court told Monique that if she did not comply with the mandatory requirements, the court would designate Chandler as the residential parent.

> I want to make it clear to you that this is basically your last chance to shape up, because if you don't, I'm going to end up transferring the children to Mr. Riker. Because you can't continue with this process of trying to repeatedly alienate the children from their father and manipulating the legal system.

---

[2] FaceTime is a live video chat and voice calling service.

[3] Emphasis added.

3

On August 11, 2014, the court entered a "Parenting Plan Proposed (PPP)

Amended."[4] The parenting plan identifies the conduct under RCW 26.09.191(3) that

has an adverse effect on the best interests of the children.[5]

## 2.2 Other Factors (RCW 26.09.191(3))

. . . .

> The abusive use of conflict by [Monique] which creates the
> danger of serious damage to the children's psychological
> development.
>
> [Monique] has withheld from [Chandler] access to the
> children for a protracted period without good cause.
>
> Other: [Monique] has engaged in parental alienation which
> is harmful to the children.

Section 3.10 of the parenting plan identifies the conditions Monique must comply

with including "obtain a psychological evaluation at her expense" and not allow the

children to "stay overnight with the maternal grandmother."

## 3.10 Restrictions

> There are limiting factors in paragraph 2.2, and the following
> restrictions shall apply:

---

[4] RCW 26.09.187 provides the criteria a court may consider in establishing the residential schedule of a parenting plan. RCW 26.09.187(3)(a) states, in pertinent part:

The court shall make residential provisions for each child which encourage each parent to maintain a loving, stable, and nurturing relationship with the child, consistent with the child's developmental level and the family's social and economic circumstances. The child's residential schedule shall be consistent with RCW 26.09.191.

[5] RCW 26.09.191(3) states, in pertinent part:

A parent's involvement or conduct may have an adverse effect on the child's best interests, and the court may preclude or limit any provisions of the parenting plan, if any of the following factors exist:

. . . .

(e) The abusive use of conflict by the parent which creates the danger of serious damage to the child's psychological development;
(f) A parent has withheld from the other parent access to the child for a protracted period without good cause; or
(g) Such other factors or conduct as the court expressly finds adverse to the best interests of the child.

4

. . . .

1.  [Monique] shall obtain a psychological evaluation at her expense. The Parenting Coordinator shall choose the psychologist. The evaluation shall include collateral contact with [Chandler]. A copy of the evaluation shall be provided to [Chandler].

. . . .

3.  The children shall not stay overnight with the maternal grandmother.

4.  [Monique] shall not schedule medical or appointments for the children with other professionals without notifying [Chandler] first, unless there is a severe, medical emergency which requires immediate medical attention.

5.  [Monique] shall not allow any other relative, other than [Chandler] to participate in making educational or medical decision[s] for the children. No adult other than a spouse to one of the parties shall have access to the children's educational and medical records.

The court retained jurisdiction to change the designation of Monique as the residential parent if she did not comply with the mandatory requirements imposed under RCW 26.09.191(3).

A violation of any of these restrictions shall be a basis for [Chandler] to seek primary residential placement. This court shall retain jurisdiction and said request shall be made to this court.

The parenting plan gives Chandler residential time with the children in Connecticut during school breaks including seven weeks in the summer and the majority of winter breaks. The parenting plan gives Chandler "liberal residential time" with the children in Washington.

The court appointed Karin Ballantyne as the parenting coordinator.

Karin Ballantyne is appointed as a Parenting Coordinator (PC) for the case for a period of no less than two years. The PC shall assist the parties in the area of co-parenting, communication, information exchange,

5

problem solving, and dispute resolution. Ms. Ballantyne can resolve disagreement between the parties through decision making authority.

The parenting plan also imposes other requirements to facilitate communication between the parents "for the benefit of the children."

### 3.13 Other

1. The parties shall enroll the children in counseling with a mutually agreed counselor. The parties shall have three weeks following the entry of the final orders to choose a counselor(s) and submit their prospective names to the other party. If the parties cannot agree on a counselor, the PC shall choose the counselor. Once a counselor is decided, both parties shall contact the counselor for intake information. [Monique] shall schedule the counseling sessions and makes sure the children attend. [Chandler] shall be able to communicate with the counselor and both parents will work with the counselor for the benefit of the children.

2. Neither parent shall schedule anything for the children which will interfere with the other party's scheduled time as outlined in paragraphs 3.3, 3.4 and 3.5 herein.

3. Neither party shall make or allow anyone in their presence to make any negative statements, disparaging remarks or negative comments about the other parent to the children.

4. Both parties shall be fully notified of any and all appointments for the children whether medical, psychological, or school related. The parties shall use FamilyWizard[6] to keep track of all appointments for the children and all important information.

Section VI, "Other Provisions," addresses telephone access and the right of each parent to obtain information.

### VI. Other Provisions

There are the following other provisions:

---

[6] OurFamilyWizard provides online tools for parents for scheduling custody and sharing information about the children.

. . . . Telephone Access. Each parent shall be permitted unimpeded and unmonitored telephone and Skype[7] (face-to-face) access with the children at a reasonable time and for reasonable duration. [Monique] shall be permitted no less than two Skype or "face-time" interactions with the children each week. The Skype time with [Chandler] shall be Sundays at 5:00 p.m. PST and Wednesdays at 5:00 p.m. PST. If there is a conflict, the parent with the conflict will email the other parent no less than 48 hours in advance and the call shall immediately be rescheduled. [Monique] shall make sure the children are available for said Skype or "face time".

Monique did not appeal entry of the August 11, 2014 parenting plan.

On November 26, 2014, Chandler filed a motion for contempt alleging Monique violated the terms of the parenting plan. Chandler asserted Monique failed to obtain a psychological evaluation, allowed the children to spend the night with the maternal grandmother, refused to use the FamilyWizard software, refused to discuss medical decisions about the children and made unilateral medical decisions for the children, made negative and disparaging remarks about Chandler to the children, and interfered with his contact with the children.

Chandler submitted a declaration and the declaration of a private investigator.[8]

---

[7] Skype is a live video chat and voice calling service.

[8] Chandler states, in pertinent part:

Psychological Evaluation
    Under section[ ]3.10.1 of the final Parenting Plan, [Monique] was ordered to obtain a psychological evaluation. The recommendation of the professional for the evaluation was to come from the Parenting Coordinator, Karin Ballantyne. Ms. Ballantyne states that she provided referrals to [Monique] in August. To date [Monique] has not started the evaluation. Further, since August of 2014, the marital home was sold. The net proceeds were distributed to the parties per the order of the court. . . .

    . . . .
Residence and False Information
    [Monique] has provided false information to me and Ms. Ballantyne about where the children are residing. Further, [Monique] has violated section 3.10.3 of the Parenting Plan because the children are residing with the maternal grandmother. They are staying there every night, sometimes even without [Monique].

    . . . .
    It was very clear from the [children] that they sleep at the maternal grandmother's house. They indicated that sometimes [Monique] stays there and sometimes she goes to "her house".

The private investigator's declaration attaches reports documenting the children spending the night at the maternal grandmother's house.

Chandler also filed a motion to modify the parenting plan to designate him as the residential parent. In his declaration, Chandler refers to his trial testimony about being "prepared to take custody of my daughters."

> I provided testimony at trial that I am in a good educational district. I am near to excellent medical facilities. I am close to excellent cultural opportunities.
> As I stated during trial, I am prepared to take custody of my daughters. . . .
> I have access to a pediatrician here in Milford who is highly regarded and accepting new patients. I am close to Yale University which has a number of different child development programs and therapists for the girls.

Parenting Coordinator Karin Ballantyne filed a declaration and status report. Ballantyne states that during the previous two months, she met with Monique twice, spoke to Chandler over the phone in depth, and reviewed the parenting plan, the findings of fact from the trial, and the court's verbatim ruling. Ballantyne expressed concern about Monique's lack of progress on several "court mandated" requirements. Ballantyne states she instructed Monique to immediately take steps to complete the following requirements:

> 1) Obtain her own phone device and alert Chandler immediately that she has released her phone number to him. This should be done by the end of this week.
>
> 2) Make certain that she and the girls are sleeping without their grandmother.
>
> 3) Sign up for the Family Wizard by the end of this week.
>
> 4) Contact [psychologist] Dr. [Gary] Wieder and make a first appointment by the end of this week.

On December 1, the court issued an order to show cause and scheduled a hearing for December 17, 2014.

Representing herself pro se, on December 11, Monique filed a declaration in opposition to the contempt motion and Chandler's motion to designate him as the residential parent. Monique argued the motion did not meet the statutory requirements for modification of the parenting plan:

> "[T]he court shall not modify a prior custody decree or a parenting plan unless it finds, upon the basis of facts that have arisen since the prior decree or plan or that were unknown to the court at the time of the prior decree or plan, that a substantial change has occurred...." RCW 26.09.260(1).[9]

Monique states she selected a psychologist for the evaluation and blamed Chandler for the delay because he did not provide the funds to pay the retainer until the end of October. According to Monique, the children slept overnight at the grandmother's house only a few times. Monique states she signed up for FamilyWizard but did not have Internet access and denies interfering with communications between Chandler and the children.

Both parties were represented by counsel at the hearing on December 17. Monique argued Chandler did not present sufficient evidence to find her in contempt. Monique conceded she did not obtain a psychological evaluation but had scheduled an appointment for that day with Dr. Wieder. Monique blamed the delay on Ballantyne but argued the primary impediment was "financial." Monique conceded there were "a few times when the kids have spent the night at grandma's" but said the maternal grandmother spent those nights somewhere else. Monique admitted she had not used

---

[9] Alterations in original.

9

FamilyWizard but "will be doing that." Monique requested a two-month continuance to give her the opportunity to comply with the requirements imposed in the parenting plan.

The court rejected Monique's argument that she was unable to obtain a psychological evaluation for financial reasons, "She had the money from the sale of the house that would have allowed her to go ahead with this." The court found Monique "lied about when it was that she got names from the parenting coordinator" and "purposefully deprived herself of a means to pay for the evaluation by taking all of the money that she got from the sale of the home and transferring it to her mother when it was clear that that wasn't necessary." The court found Monique "clearly has not in good faith sought a psychological evaluation. At the very minimum, the actual evaluation should have been started now, not just signing up with Dr. Wieder."

The court found Monique violated the mandatory requirement prohibiting her from allowing the children to spend the night with her mother, and there is "no question that the maternal grandmother has negative and detrimental effect on the children."

> Secondly, it's clear [Monique] is in violation of the Court's order under 3.10.3. She and the children are living with her mother in her mother's home. That's clear from what Mr. Riker has seen and heard . . . about where the children say they are sleeping, where their belongings are, where their pets are. It's clear from the detective's surveillance.

The court also found Monique continued to alienate Chandler from the children and was making no attempt to comply with other provisions of the parenting plan.[10]

---

[10] The court found:
> It's also clear that [Monique] is making no attempt to try and comply with other provisions of the Court's order. She has not made a good-faith attempt to engage in joint decision-making regarding medical care. She didn't sign up for [FamilyWizard] until late November, at least two and a half months late, she hasn't posted anything on it.

10

The court rejected Monique's request for a continuance to comply with the parenting plan conditions.

> [W]e have no guarantee based on what's happened in the past four months that [Monique] is going to move forward with this evaluation, and then we're going to be back here again in a couple months and she is going to have more excuses. Because that's what she does. She makes excuses as to why she doesn't want to follow a court's order.

The court found Monique in contempt.

> Monique Riker has not complied with the provisions of the parenting plan and had the ability to comply with the parenting plan, and is currently unwilling to comply. The noncompliance with the provisions of the parenting plan is in bad faith.[11]

The order states Monique can purge the contempt by obtaining a psychological evaluation and following recommended treatment.

Based on violations of the mandatory requirements of the parenting plan entered on August 11, 2014, the court entered an "Order Re Modification/Adjustment Of

---

[11] The order of contempt states, in pertinent part:

[Monique] failed to comply with section "3.10.1 Restrictions" of the final Parenting Plan by failing to obtain a psychological evaluation.

[Monique] failed to comply with section "3.10.3 Restrictions" which states, "The children shall not stay overnight with maternal grandmother" by allowing the children to reside with the maternal grandmother and leaving the children overnight with the maternal grandmother.

[Monique] failed to comply with section "3.13.3 Other"' by continuing to make and allowing the maternal grandmother to make which states, "negative statements, disparaging remark or negative comments" about [Chandler].

[Monique] failed to comply with section "3.13.4 Other" by failing to use "FamilyWizard to keep track of all appointments for the children and all important information."

[Monique] failed to comply with "4.2 Major Decisions" by refusing to include [Chandler] in health care decision regarding the minor children.

[Monique] failed to comply with "VI Other Provisions" under subsection 6.1, which states, "Each parent shall be permitted unimpeded and unmonitored telephone and Skype (face-to-face) access with the children at a reasonable time and for a reasonable duration." On more than one occasion since the entry of the final orders, [Monique] has coached the children during the Skype calls with [Chandler]. [Monique] has also ended at least one call.

Custody Decree/Parenting Plan/Residential Schedule" and "FINAL" parenting plan designating Chandler as the residential parent.

The Order Re Modification/Adjustment Of Custody Decree/Parenting Plan/Residential Schedule states, in pertinent part:

> This order is based on the terms of the Parenting Plan entered August 11, 2014, wherein the court required [Monique] to complete certain requirements and follow certain restrictions in order to protect the children. The court reserved the right to change primary residential placement if [Monique] failed to follow the terms and conditions under 3.10 of the Parenting Plan.

The order states the court has the authority under the case law to retain jurisdiction to change the residential placement of the children in the event Monique did not comply with the requirements imposed "to protect the children." The court granted the request to change the residential placement of the children because Monique did not comply with the terms of the initial parenting plan entered on August 11, 2014. The Order Re Modification/Adjustment Of Custody Decree/Parenting Plan/Residential Schedule states, in pertinent part:

> This court specifically retained jurisdiction to address [Chandler]'s request to change primary residential placement of the children in the event [Monique] failed to follow section 3.10 of the final Parenting Plan. The court relies on Court of Appeals ruling [In re Marriage of Possinger, 105 Wn. App. 326, 19 P.3d 1109 (2001)] and Supreme Ct's reference to same in [In re Parentage of C.M.F., 179 Wn.2d 411, 314 P.3d 1109 (2013)].
>
> The court clearly set forth fact at end of trial and in 3.10 of Parent Plan that placement of children with [Monique] depended on her following 3.10. 3.10.6 states if [Monique] fails [to] follow terms court has ability to change primary placement.
>
> . . . .

12

[Chandler]'s request to modify/adjust the custody decree or parenting plan/residential schedule is granted.[12]

The final parenting plan designates Chandler as the residential parent. The court required Monique to obtain a psychological evaluation and ordered supervised visits with the children until she completed the evaluation and began treatment. The court denied the motion for reconsideration.

---

[12] The order also states, "In the event an additional finding of change in circumstances is required," the court entered findings that modification is in the best interests of the children. The Order Re Modification/Adjustment Of Custody Decree/Parenting Plan/Residential Schedule states, in pertinent part:

> The custody decree/parenting plan/residential schedule should be modified because a substantial change of circumstances has occurred in the circumstances of the children or the nonmoving party and the modification is in the best interest of the children and is necessary to serve the best interest of the children. This finding is based on the factors below:
>
>> The children's environment under the custody decree/parenting plan/residential schedule is detrimental to the children's physical, mental or emotional health and the harm likely to be caused by a change in environment is outweighed by the advantage of a change to the children.
>
> The following facts, supporting the requested modification, have arisen since the decree or plan/schedule were unknown to the court at the time of the decree or plan/schedule:
>
> The court order that [Monique] complete requirements and follow restrictions under 3.10 of the final Parenting Plan. One requirement was that [Monique] obtain a psychological evaluation and follow treatment recommendations. [Monique] has failed to obtain a psychological evaluation.
>
> In addition, [Monique] was not to allow the children to be with the maternal grandmother overnight. [Monique] has provided false information to [Chandler] and the Parenting Coordinator about the residence of the children. The children have been residing with the maternal grandmother. There was no question that the maternal grandmother has negative and detrimental effect on the children.
>
> [Monique] . . . continue[s] to seek to alienate the children from [Chandler].
>
> [Monique] refuses to engage in joint decision making with [Chandler] regarding non-emergency health care of the children.
>
> . . . .
>
> [Monique]'s failure to follow the terms and conditions and requirement in the final Parenting Plan including refusing to advise [Chandler] and the Parenting Coordinator that the children are residing with the maternal grandmother, makes her home a detrimental environment for the children. [Monique] has failed to obtain a psychological evaluation and follow any recommended treatment. Her unresolved mental health issues create a detrimental environment for the children. [Monique]'s continued efforts to alienate the children from [Chandler] are emotionally damaging to the children.

ANALYSIS

Monique contends the court did not have the authority to order a change in the designation of the residential parent without complying with the requirements for modification of a final parenting plan under RCW 26.09.260.[13]

A trial court has broad discretion in adopting a parenting plan. In re Marriage of Littlefield, 133 Wn.2d 39, 51-52, 940 P.2d 1362 (1997). We review the trial court's decision to modify the parenting plan for manifest abuse of discretion. In re Marriage of Chandola, 180 Wn.2d 632, 642, 327 P.3d 644 (2014); In re Marriage of Katare, 175 Wn.2d 23, 35, 283 P.3d 546 (2012); Littlefield, 133 Wn.2d at 46-47. "A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard." In re Marriage of Fiorito, 112 Wn. App. 657, 664, 50 P.3d 298 (2002).

If supported by substantial evidence, we treat the trial court's findings of fact as verities on appeal. Chandola, 180 Wn.2d at 642. Unchallenged findings are verities on appeal. In re Marriage of Brewer, 137 Wn.2d 756, 766, 976 P.2d 102 (1999). We do not review the trial court's determinations as to the credibility and persuasiveness of the evidence. In re Marriage of Rich, 80 Wn. App. 252, 259, 907 P.2d 1234 (1996).

Modification of a final parenting plan is generally governed by RCW 26.09.260. Under RCW 26.09.260(1), a court shall not modify a final parenting plan unless the court finds "a substantial change has occurred in the circumstances of the child or the

---

[13] Monique contends the court erred in modifying the parenting plan without applying the child relocation act, RCW 26.09.405 through .560. We decline to consider an argument raised for the first time on appeal. RAP 2.5(a). Monique also appealed the order of contempt; however, she does not assign error to the court's findings in the order of contempt. RAP 10.3(4).

nonmoving party" and "the modification is in the best interest of the child and is necessary to serve the best interests of the child."

Because changes in designation of the residential parent can be "highly disruptive to children," there is a strong presumption against modification. In re Marriage of McDole, 122 Wn.2d 604, 610, 859 P.2d 1239 (1993). Nonetheless, because trial courts have "broad discretion in matters dealing with the welfare of children," our appellate courts have recognized that a trial court has equitable power to defer a permanent decision on a parenting plan for a limited period of time after entry of the decree. McDole, 122 Wn.2d at 610; In re Marriage of Possinger, 105 Wn. App. 326, 336-37, 19 P.3d 1109 (2001); In re Marriage of Adler, 131 Wn. App. 717, 725, 129 P.3d 293 (2006); In re Marriage of True, 104 Wn. App. 291, 298, 16 P.3d 646 (2000); In re Parentage of C.M.F., 179 Wn.2d 411, 426-27, 314 P.3d 1109 (2013). When this occurs, the deferred decision is based on the criteria for establishing a permanent parenting plan in RCW 26.09.187, not the substantial change in circumstances standard of RCW 26.09.260(1). Possinger, 105 Wn. App. at 337; see also In re Marriage of Little, 96 Wn.2d 183, 194, 634 P.2d 498 (1981).

In support of her argument that the trial court did not have the authority to change the residential placement of the children, Monique relies on a number of cases holding that after entry of the final parenting plan, the parenting plan can be modified only under RCW 26.09.260. See e.g., In re Marriage of Coy, 160 Wn. App. 797, 804, 248 P.3d 1101 (2011); In re Custody of Halls, 126 Wn. App. 599, 606-07, 109 P.3d 15 (2005). But here, the record establishes the court did not enter a final parenting plan on August 11, 2014. The decision of the court to designate Monique as the residential parent was an "initial" decision subject to compliance with the mandatory terms of the parenting

plan. Specifically, the requirements the court imposed under RCW 26.09.191(3) to address adverse conduct detrimental to the best interests of the children. The court's oral decision and the parenting plan make clear that violation of the mandatory requirements under RCW 26.09.191(3) shall be a basis to designate Chandler as the residential parent.

The trial court expressly relied on Possinger and the reference to Possinger in C.M.F. as authority to retain jurisdiction to change the residential designation for failure to comply with the requirements imposed under RCW 26.09.191(3).

In Possinger, the court designated the father as the residential parent but reserved ruling and retained jurisdiction on a final residential parenting plan for a year. Possinger, 105 Wn. App. at 328. Following the review hearing, the court designated the mother as the residential parent. Possinger, 105 Wn. App. at 331. On appeal, we held the trial court has the equitable power to defer a final decision on the designation of the residential parent for a one-year period and use the best interests of the child criteria rather than the statutory criteria for modification of a parenting plan. Possinger, 105 Wn. App. at 336-37.

> [W]here the best interests of the child requires it, the trial court is not precluded by the Parenting Act [of 1987, chapter 26.09 RCW,] from exercising its traditional equitable power derived from common law to defer permanent decision making with respect to parenting issues for a specified period of time following entry of the decree of dissolution of marriage.

Possinger, 105 Wn. App. at 336-37.

In C.M.F., the court addressed whether an adjudicated father was required to follow the requirements for modification under RCW 26.09.260 where no parenting plan had been entered but the order allowed either party to file a motion to establish a

16

residential schedule. C.M.F., 179 Wn.2d at 416-17. The court distinguished Possinger and other cases where the court "retained jurisdiction for only about a year after the entry of the parenting plan," stating in none of those cases was there "an open-ended reservation." C.M.F., 179 Wn.2d at 427. The court concluded the provision that allowed "a 'reservation' of final residential placement to extend indefinitely runs contrary to the overriding policy considerations identified in RCW 26.09.002." C.M.F., 179 Wn.2d at 427; see RCW 26.09.002 ("In any proceeding between parents under this chapter, the best interests of the child shall be the standard by which the court determines and allocates the parties' parental responsibilities."). The court held the trial court erred in failing to follow the requirements for modification under RCW 26.09.260 and .270. C.M.F., 179 Wn.2d at 426-27.

Monique argues that as in C.M.F., the trial court impermissibly retained jurisdiction after entry of the August 11, 2014 parenting plan for an "open-ended" period of time. The record does not support her argument.

Unlike in C.M.F., the terms of the parenting plan make clear the court did not retain jurisdiction for an open-ended period of time. Although the trial court did not identify a timeline, the mandatory conditions under RCW 26.09.191(3) required Monique to take immediate steps to address conduct that was harmful and adverse to the best interests of the children. For example, the parenting plan states Monique "shall obtain a psychological evaluation," the children "shall not stay overnight with the maternal grandmother," and Monique "shall not schedule medical or appointments for the children with other professionals without notifying [Chandler] first."[14] The court retained

---

[14] Emphasis added.

17

jurisdiction to ensure compliance with the mandatory requirements under RCW 26.09.191(3) designed to address Monique's conduct that was adverse to the best interests of the children, and the court made clear the failure to do so would result in designating Chandler as the residential parent. Further, the hearing on the motion to modify the parenting plan to change the designation of the residential parent occurred only four months after entry of the August proposed parenting plan.

Monique claims the court did not have the authority to modify a parenting plan for violation of the conditions imposed under RCW 26.09.191(3). We disagree.

RCW 26.09.191(3) gives the court the authority to limit any provision in the parenting plan where it finds the parent's "involvement or conduct may have an adverse effect on the child's best interests" and any of the factors listed in section (3) are present. RCW 26.09.191(3) states, in pertinent part:

> A parent's involvement or conduct may have an adverse effect on the child's best interests, and the court may preclude or limit any provisions of the parenting plan, if any of the following factors exist:
> . . . .
> (e) The abusive use of conflict by the parent which creates the danger of serious damage to the child's psychological development;
> (f) A parent has withheld from the other parent access to the child for a protracted period without good cause; or
> (g) Such other factors or conduct as the court expressly finds adverse to the best interests of the child.

The court designated Monique as the residential parent but only on the condition that she comply with the requirements to address her conduct under RCW 26.09.191(3). The unchallenged findings establish that Monique's conduct had an adverse effect on the children. She engaged in "the abusive use of conflict which creates the danger of serious damage to the children's psychological development."

18

She "engaged in parental alienation which is harmful to the children" and without good cause, she interfered with Chandler's access to the children.

Under its broad power to protect the best interests of the children, the court has the authority to specify the terms under which parenting plans may be modified. In True, the court held a trial court has the authority to retain jurisdiction for several months to review the efficacy of the parenting plan. True, 104 Wn. App. at 298. On appeal, we upheld the authority of the court to retain jurisdiction and held the decision was not subject to a threshold determination. True, 104 Wn. App. at 298.

> After having the parties before it in a contentious parenting plan hearing, back and forth from mediation, and after entering the order modifying the parenting plan, a trial court may retain jurisdiction over the matter for a limited period of time in order to review the efficacy of its decision and to maintain judicial economy following its order. This is especially true where, as here, the finality of the plan by its own terms is open to review and review is likely to be sought and likely to occur.

True, 104 Wn. App. at 298.[15]

The undisputed record shows the conduct the court identified under RCW 26.09.191(3) had an adverse effect on the best interests of the children that justified the requirements the court imposed in the initial parenting plan and the decision to change the designation of the residential parent in the final parenting plan.[16]

---

[15] Footnote omitted.

[16] Accordingly, we need not address the findings the court entered in the event it was necessary to address the requirement to show a substantial change in circumstances under RCW 26.09.260. However, we note the record establishes the court made clear in the August 11, 2014 parenting plan that the failure to comply with the conditions was adequate cause to change the residential designation. We also note Monique did not request an evidentiary hearing and substantial evidence supports the findings the court entered under RCW 26.09.260.

19

We affirm.[17]

WE CONCUR:

_Schindler, J_

_Trickey, ACJ_

_Verellen, CJ_

---

[17] We decline to award fees on appeal.