[No. 2555. Decided May 6, 1897.]

REBECCA KIMBLE, *Respondent*, v. DAVID E. KIMBLE
AND MINERVA KIMBLE, *Appellants.*

HUSBAND AND WIFE — ACTION FOR MAINTENANCE — ESTOPPEL — COM-
MUNITY LANDS — SEPARATE CONVEYANCE — ACTION TO SET ASIDE.

A wife, who without cause has been abandoned by her husband,
may maintain an action for maintenance independent of an action
for divorce. (GORDON, J., dissents).

The fact that a wife has neglected for a period of thirty years
to make demand for support and maintenance upon a husband
who has abandoned her does not work an estoppel against her
right to maintenance.

A conveyance of community lands by a husband to a woman,
with whom he was living in adultery as his wife, may be set aside
in an action by the lawful wife, when such conveyance had been
made for the purpose of defrauding the lawful wife, and the
grantee had knowledge of the marriage relation existing between
her grantor and such lawful wife, as no question of estoppel can
arise in such a case.

Appeal from Superior Court, Skagit County.—Hon.
HENRY McBRIDE, Judge. Affirmed.

*Million & Houser,* for appellants:

Will an action for alimony lie under our laws without
being coupled with an application for the primary relief
of divorce? The doctrine denying the independent right
has been adopted by the leading courts and authorities of
this country. 1 Bishop, Marriage, etc. (1st ed.), §§ 1385,
1389, 1393, 1394, 1400; *Kelley v. Kelley,* 161 Mass. 111
(42 Am. St. Rep. 389); *Adams v. Adams,* 100 Mass. 365
(1 Am. Rep. 111); *Fischli v. Fischli,* 12 Am. Dec. 257;
*Bowman v. Worthington,* 24 Ark. 522; *Crittenden v.
Schermerhorn,* 39 Mich. 661 (33 Am. Rep. 40); *Parsons
v. Parsons,* 9 N. H. 309 (32 Am. Dec. 362); *Davis v.*

*Davis,* 75 N. Y. 221; *Codd v. Codd,* 2 Johns. Ch. 141; *Turrel v. Turrel,* 2 Johns. Ch. 391; *Rees v. Waters,* 9 Watts, 90.

It will be observed by an inspection of the complaint that the cause of action, if one ever existed, accrued in 1863, thirty-three years before any movement was made to assert any rights by reason of the acts complained of in plaintiff's complaint without alleging any sufficient excuse for the extraordinary delay. Does plaintiff's complaint on its face present such a case of "stale demand," without sufficient excuse, as will bar her action? We think the authorities answer this question in the affirmative. *Landsdale v. Smith,* 106 U. S. 391; *Roeder v. Fouts,* 5 Wash. 135; *Reed v. Reed,* 17 N. W. 720; *Compo v. Jackson Iron Co.,* 16 N. W. 295; *Allen v. Allen,* 10 N. W. 113; *Godden v. Kimmell,* 99 U. S. 202; *Hume v. Beale,* 17 Wall. 348; *Bell v. Hudson,* 73 Cal. 285 (2 Am. St. Rep. 791); *West v. Russell,* 74 Cal. 544; *Chapman v. Bank of California,* 97 Cal. 159; *Badger v. Badger,* 2 Wall. 94; *Sullivan v. Portland, etc., R. R. Co.,* 94 U. S. 807; *McDaniels v. Bank,* 29 Vt. 230 (70 Am. Dec. 406); *Hyde v. Hyde,* 50 Vt. 301; 1 Pomeroy, Equity Jurisprudence, § 418; 2 Bishop, Marriage, etc., § 425. The only attempt to plead excuse for delay in bringing this action is the showing made as to plaintiff's poverty and absence from states in which plaintiff has had residence, neither of which is sufficient excuse. *Hovenden v. Lord Annesley,* 5 Sch. & Lef. 607; *Wright v. Fisher,* 32 N. W. 606 (8 Am. St. Rep. 886); *Stow v. Russell,* 36 Ill. 18; *Hayward v. Elliott National Bank,* 96 U. S. 611; *Roberts v. Tunstall,* 4 Hare, 257; *Seculovich v. Morton,* 101 Cal. 673 (40 Am. St. Rep. 106); *McElmoyle v. Cohen,* 13 Pet. 327; *Scott v. Evans,* 1 McLean, 486; *Houston v. Jennings,* 12 Tex. 487; *Bush v. Sherman,* 80 Ill. 160.

*Sinclair & Smith,* for respondent:

Courts of equity have power to decree alimony and maintenance on an original bill for that purpose alone, irrespective of any application for divorce, under their general power to administer equitable relief. *Bueter v. Bueter,* 45 N. W. 208; *Hanscom v. Hanscom,* 39 Pac. 885; *Cochran v. Cochran,* 60 N. W. 942; *Earle v. Earle,* 60 Ill. App. 360; *Steele v. Steele,* 29 S. W. 17; *Edgerton v. Edgerton,* 29 Pac. 966 (33 Am. St. Rep. 557); *Earle v. Earle,* 43 N. W. 118 (20 Am. St. Rep. 667); *Platner v. Platner,* 23 N. W. 764; *Farber v. Farber,* 20 N. W. 472; *Finn v. Finn,* 17 N. W. 739; *Glover v. Glover,* 16 Ala. 440; *Wray v. Wray,* 33 Ala. 187; *Kinsey v. Kinsey,* 37 Ala. 393; *Galland v. Galland,* 38 Cal. 265; *Griffin v. Griffin,* 8 B. Mon. 120; *Garland v. Garland,* 50 Miss. 694; *Lawson v. Shotwell,* 27 Miss. 630; *Butler v. Butler,* 4 Litt. 201; *Wallingsford v. Wallingsford,* 6 Harr. & J. 485; *Walker v. Stringfellow,* 30 Tex. 570; *Carr v. Carr,* 22 Grat. 168; *Almond v. Almond,* 4 Rand. 662 (15 Am. Dec. 781); *Rhame v. Rhame,* 1 McCord, 197 (16 Am. Dec. 597); *Jelineau v. Jelineau,* 2 Dess. Eq. 45; *Bascom v. Bascom,* Wright (Ohio), 632.

The court properly overruled the demurrers of the appellants, because, in addition to an action for support, this is also an action to quiet title to the lands in the community and to cancel the fraudulent deeds to Minerva Kimble, and restrain transfers of the lands. "When community property has been conveyed without the wife joining in the act, she alone can maintain an action to set such deed aside." *Hair v. Wood,* 58 Tex. 77; *Cranmer v. Porter,* 41 Cal. 465; *Bennett v. Mattingly,* 110 Ind. 197; *Crooks v. Kennett,* 12 N. E. 715; *Kashaw v. Kashaw,* 3 Cal. 312; *Andrews v. Andrews,* 3 Wash. T. 286.

The question of laches divides itself into two parts:

First, Is the respondent estopped as to the first deed? and, second, will her conduct constitute laches so as to estop her from claiming her rights as a wife? We take the position that no one can neglect herself out of marriage or acquiesce another into being her husband's wife. The cases cited by appellants are none of them in point. They each and all lay down the general rule of laches, which we admit, with the qualification that each case is to be judged by its own particular circumstances, which is the end and aim of equity. *Anderson v. Northrop*, 12 South. 318; *Babb v. Sullivan*, 21 S. E. 277; *Tynan v. Warren*, 31 Atl. 596; *Welch v. Whelpley*, 28 N. W. 744 (4 Am. St. Rep. 810); *Maltby v. Austin*, 27 N. W. 162; *Richards v. Hatfield*, 59 N. W. 777; *Fitzgerald v. Fitzgerald & M. Const. Co.*, 62 N. W. 899.

The presumption of laches may be rebutted by showing that it was caused by want of funds. Stewart, Marriage & Divorce, § 319, and cases cited.

Where the wrong complained of is continuing in its character, lapse of time will not bar an action, at all events if there is an element of fraud in the case. *Denham v. Watson*, 24 Neb. 779; *Sanders v. Jacob*, 20 Mo. App. 96; *Wells v. New Haven & N. Co.*, 23 N. E. 724 (21 Am. St. Rep. 423).

Another reason why this plea cannot be interposed here is because by the marriage contract, and § 1400, Gen. Stat., the husband is the trustee of the community property for the benefit of the community, and now seeks to exclude one of his *cestuis qui trustent* from participating in the benefits of the rents and profits thereof. Laches cannot be pleaded in an action against an express trustee, and length of time is no bar to a trust clearly established. 1 Pomeroy, Equity Jurisprudence (2d ed.), § 417, note 7; *Badger v. Badger*, 2 Wall. 87; *Seculovich v. Morton*,

36 Pac. 387 (40 Am. St. Rep. 106); *Fawcett v. Fawcett,* 55 N. W. 405 (39 Am. St. Rep. 844).

The opinion of the court was delivered by

DUNBAR, J.—The question lying at the threshold of this case is a jurisdictional one, viz., can a wife, who, without cause has been abandoned by her husband, who possesses the means to contribute to her support, maintain an action for maintenance uncoupled with, or independent of, an action for divorce. On this proposition the authorities are concededly conflicting. In some states the courts refuse to entertain jurisdiction of such a case, on the ground that alimony was at the common law only an incident to a divorce proceeding and that an independent right thereto was not acknowledged, and that the right, if it exists at all, is a creature of statute, and the statute which provides, as does our statute, for a decree for alimony as ancillary only to the divorce proceeding must be construed as excluding the idea of an independent maintenance, on the theory expressed in the maxim that the expression of one excludes the others. Such view is held by the courts of Arkansas, Louisiana, Massachusetts, Michigan, Missouri, New Hampshire, New York, Pennsylvania and Wisconsin. Other courts have taken the view that the courts of equity, exercising their plenary powers, would grant alimony as an independent remedy in a case where divorce was not sought. Decisions to this effect have been made in Alabama, Georgia, Iowa, Kansas, Kentucky, Maryland, Mississippi, New Jersey, Ohio, South Carolina, Texas, Virginia, California and West Virginia. In still other states, the right has been maintained, but by statutes providing for an independent action, and in such cases the adjudications are, of course, without value in determining

the weight of authority on the general proposition involved.

Mr. Bishop, in his excellent work on Marriage, Divorce and Separation (vol. 1, § 1393), indulges in the following caustic criticism of the courts which have assumed jurisdiction of the independent action:

" In spite of the fact that the law consists of reason, and that reason is constantly detecting and pointing out judicial blunders, by means whereof cases wrongly decided and false doctrines are overruled, it is no novel thing for a bench of judges to accept some thoughtless utterance of a predecessor as though it were reason, and decide cases upon it, without a particle of examination to see whether it is just or false. Indeed, through this sort of abnegation of the office of thinking, our law has been made to linger and it now remains in the shadows of the dark ages, instead of walking onward with the other sciences toward the light of a better future."

In spite of this criticism, however, we are inclined to think that the better reasoning is advanced by the courts criticised, and, as this is a question of conflict of authority, we feel justified in deciding in accordance with the principles of equity and reason as they appeal to us.

It might be that a blind adherence to the letter of the old English decisions would prevent the exercise of jurisdiction, although the English decisions themselves are conflicting, and different views are expressed by eminent English jurists on this question. In England, there was a division of responsibility and jurisdiction in divorce and alimony cases, which is now, under our system of jurisprudence, consolidated and exercised in a simple manner by the courts of equity. For instance, in England the spiritual or ecclesiastical courts had jurisdiction to grant divorces, but where such divorces had been decreed by the ecclesiastical courts, either *a mensa et thoro* or *a vinculo*

*matrimonii*, the courts of chancery exercised the jurisdiction of granting alimony; and the history of litigation on this subject cannot be read without forcing the conclusion that the courts were constantly seeking pretexts to grant separate maintenance. For instance, if an agreement for maintenance had been entered into, the courts would compel the performance of the agreement on the part of the husband, where he refused to carry out his contract. The old writ of *supplicavit* was resorted to. This proceeding was prosecuted by the wife whose treatment by her husband made it dangerous for her to live with him. Upon this fact appearing, the court would award her a right to live separate and compel the husband to furnish her with a separate maintenance. If it were necessary to find authority at the common law for assuming jurisdiction in a case of this kind, it can be found in the execution of this writ, for whatever technical term might be applied to the writ, the effect was to grant a separate maintenance to a wife who could not live with her husband. It is true that, in this instance, she could not live with her husband because his conduct endangered the safety of her person. The particular reason, however, that necessitated the separate domicile is not important. The practical and controlling fact was that she could not live with him. This fact is just as controlling, when she is prevented from living with him by the husband's abandonment of her and his refusal to live with her. The practical effect on the wife is exactly the same; her necessities are the same; and it seems to us that no reasonable distinction can be drawn in the application of the remedy.

Another expediency which was adopted by the courts was to concede to the abandoned wife the right to use the credit of her husband. She was relegated to this indirect, unsatisfactory and, in many instances, inadequate

remedy. She was allowed to purchase necessaries of traders, who in turn could maintain an action against the husband for their value. So that the question of separate maintenance was after all litigated, burdened and complicated with the rights of third parties, involving questions of collusion and other vexatious questions which must necessarily arise in a case of this kind, to say nothing of the improbability of the wife's being able to purchase on the credit of a husband who had abandoned her. The ordinary merchant would hesitate to dispose of his goods with the chance of making his collections, if made at all, through the agency of a delayed and expensive litigation. It would seem to be much more in consonance with a straightforward policy to settle the question of maintenance by direct suit between the parties interested, and where all the rights involved could be settled in one action, than to adopt a circuitous and indirect method of reaching the same result, and a method which would be liable, at least, to involve a multiplicity of vexatious suits. It is conceded that the husband is morally and legally obligated to maintain his wife. If this is a duty which is imposed upon the husband by law, it becomes the right of the wife to receive the benefits flowing from the performance of the duty, and she suffers a wrong when that duty is not performed. And, if it is true that equity provides a remedy for all wrongs, a court of equity ought not to make the announcement that it would compel an abandoned wife, who is without fault, to seek a divorce from her husband before she can enforce the performance of a duty which the law imposes upon her husband, and obtain a right which the law guarantees to her, viz.: the right to live.

Nor do we think the best interests of society would be subserved by such a construction. It would encourage applications for divorce and necessarily increase them.

Again, it would be a lever in the hands of husbands who abandon their wives without cause—who desire to be released from the bonds of matrimony, but are unable to procure a decree—to compel their wives to seek a divorce, the benefits of which would accrue to them.

In addition to this there is a question of conscience involved. Many women will be found who are conscientiously opposed to divorces. The members of religious societies which embrace great numbers of our citizens are opposed on religious and conscientious principles to divorces. And when we enter the domain of the affections, strange as it may seem, we find that affection frequently survives neglect, brutal treatment and abandonment. In such a case, the wife does not desire a divorce from her husband. That is the one thing she shrinks from. She believes that the alienation of the affections of her husband is temporary and hopes in time to win him back to a resumption of the marriage relations. But in the meantime she must live.

Whatever may have been the difficulties in the way of the English courts in respect to this kind of an action, by reason of the legal existence of the wife being merged in the husband, those difficulties do not exist in this state, where the wife is by law especially emancipated from the control of her husband, where she is allowed to sue and be sued, and where her legal existence is as distinct and potent as that of her husband, and especially where her interests in community property are equal to his.

Nor do we think there is any force in the contention that the statute has excluded the idea of a suit for separate maintenance, because it has provided for temporary and permanent alimony in connection with divorce proceedings. The statute which simply seeks to control alimony in a divorce proceedings does not, in our judgment,

imply that maintenance cannot be decreed in any other case.

As to the merits of the case, the court, among others, makes the following findings, to-wit:

"1. That on the 25th day of December, 1847, in Scotland county, in the state of Missouri, the plaintiff Rebecca Kimble and the defendant David E. Kimble intermarried, and ever since have been and now are husband and wife; that from said 25th day of December, 1847, up to about the month of June, 1863, they lived continuously together, except as follows, as such husband and wife in the states of Missouri and Iowa; that while so living together as husband and wife there were born to them seven children; that about the year 1861 the defendant D. E. Kimble, without just cause and without the consent and against the will of this plaintiff, . . . deserted and abandoned this plaintiff and their said family and joined the defendant Minerva Kimble in the state of Illinois; that subsequent thereto this plaintiff pursued said D. E. Kimble and discovered said D. E. Kimble and Minerva Kimble living together in open adultery at or near the town of Quincy in said state; that thereupon said D. E. Kimble, upon the entreaty of this plaintiff returned to the state of Missouri and thereafter lived with this plaintiff as her husband and father of his children, up to and until the year 1863, when said D. E. Kimble, this plaintiff and their said family removed to the state of Iowa; that about the month of June, 1863, in the state of Iowa, the defendant D. E. Kimble, against the will and without the consent of the plaintiff and without just cause, deserted and abandoned his said wife and family, leaving them destitute and dependent on the charity of others; that after said desertion was committed he joined defendant Minerva Kimble who at all times herein mentioned well knew that the defendant D. E. Kimble and the plaintiff were and are husband and wife.

"2. That ever since said desertion and now the defendant has wholly failed, neglected and refused to contribute anything to the support of said wife and family, but said

family at all times thereafter were educated, supported and maintained by the sole labor and effort of said plaintiff.

" 3. That the plaintiff is a weak and infirm woman of seventy years of age, and for the past fifteen years has been physically incompetent to provide for her own support, but has been living on the charity of children and friends,  .   .   .   and said David E. Kimble still neglects and refuses to contribute anything whatever to her support.

"4. That by reason of her poverty said plaintiff has at all times herein mentioned been deprived of any and all means of transportation to this state for the purpose of enforcing her rights herein, and never at any time herein mentioned has she been enabled to procure means to pay her expenses in coming to said state of Washington."

The court, in substance, further finds that David Kimble, in company with Minerva Kimble, came from the state of Illinois and settled in the county of Skagit, in the state of Washington, where they have been since and now are, living together, claiming to be husband and wife. Finds that the defendant David Kimble has acquired the lands in controversy and that he has deeded the same to Minerva Kimble, and that he did the same for the purpose of cheating the plaintiff, and that Minerva Kimble, at the time of the transfer of said real estate, knew that the defendant David Kimble had no right to convey the same.   The eighteenth finding of fact is as follows:

"That about the year 1876 this plaintiff was informed that defendant D. E. Kimble, her said husband, and the defendant Minerva Kimble, were together in the state of Washington, and until the 11th day of May, 1893, plaintiff has not taken steps to assert her claims as wife of D. E. Kimble in the state of Washington, but the court finds that at no time herein mentioned until the trial of this case has plaintiff been possessed of the means wherewith to procure transportation to this state for the purpose of asserting her said claim or for any other purpose whatever.

That she was during all of said time unable to do so by reason of her poverty, living during all of said times dependent on the charity of friends for her support."

The court, as conclusions of law, finds that the plaintiff and D. E. Kimble have been since the 25th day of December, 1847, and now are, husband and wife; that the lands acquired are the property of the community consisting of defendant D. E. Kimble and the plaintiff; that all deeds, conveyances and instruments purporting to convey any of said lands to the defendant Minerva Kimble by said D. E. Kimble are without consideration, fraudulent and void, and should be so declared; that the said defendant D. E. Kimble had no right or authority to convey the same; that the plaintiff is entitled to maintenance and support from her said husband and that $180 per year, as long as she lives, should be decreed to her as such reasonable sum for her support and maintenance; that in order to maintain this action it was necessary for her to employ counsel; the court finds $150 as a reasonable attorney's fee to be allowed her for the purposes hereinaforesaid. The judgment follows in accordance with the findings.

The findings of fact are fully justified by the testimony and, we think, sustain the conclusions reached by the court. The separate answers of the two defendants, David Kimble and Minerva Kimble, raise substantially the same issues. There is no principle of estoppel which can be applied to this case. So far as the question of maintenance is concerned, the action is based on the responsibility of the husband growing out of the marriage relation. We think the marriage between the plaintiff and defendant David Kimble was sufficiently proven, and the marriage relation, once established, continues until it is dissolved either by death or decree of a competent judicial tribunal. The wife being faultless at the time of the abandonment, any indiscretions which she may have been guilty of after-

wards will not relieve the husband of this responsibility, and he certainly cannot seize upon the fact that she has not asked him for maintenance for a quarter of a century, during which time she has, unaided by him, supported herself and children, as a pretext for avoiding his responsibilities in the future. The court might well have stopped with the proof of marriage and abandonment, without considering any circumstances which intervened between the time of the abandonment and the bringing of this action.

Nor do we think on the other proposition, viz.: the right to have the deeds set aside, that, under the circumstances of this case, there is any room for the application of the doctrine of estoppel, laches or stale demands; nor has the statute of limitations run, even had it been properly pleaded. Marriage has been proven and, never having been annulled, the property accumulated was community property, and the community was the plaintiff and defendant David Kimble. David could not belong to two communities, one composed of himself and Rebecca and the other composed of himself and Minerva. Our community property laws are not so promiscuous as this. Of course, any relations which he entered into with Minerva are absolutely illegal. Minerva cannot invoke the doctrine of estoppel, for the evidence shows that she was aware of the marriage relations existing between David and Rebecca, notwithstanding her assertion that she had been informed by counsel that no such relations existed. The deeds from David to Minerva, being deeds to community real estate, were illegal under the statute (Gen. Stat., § 1400), being conveyances of the husband not joined in by the wife. The testimony shows, in addition thereto, that the conveyances were fraudulent, being made for the purpose of transferring the community property from the true wife to the pretended one, and defendant Minerva, being a party to

the fraud, and the court finding in accordance with the testimony that the wife prosecuted her action to set aside these deeds as soon as she could after she had knowledge of the conveyances, we think the court properly overruled the defendants' demurrers on all the points urged. If defendant Minerva Kimble has any claims against the community for advances made to it, such claims can be determined in a proper case, but they are not proper subjects of investigation in this case.

The allowance of $180 per year, under the circumstances of this case, we think an exceedingly modest one, and the attorney's fee is reasonable.

The judgment will in all things be affirmed.

ANDERS and REAVIS, JJ., concur.

GORDON, J.—I do not think an action for maintenance will lie and therefore dissent.