[No. 51130–6. En Banc. July 3, 1985.]

*In the Matter of the Marriage of* GERTRUDE B. GANNON, *Appellant, and* GEORGE H. GANNON, *Respondent.*

*Bryan G. Evenson* (of *Halverson, Applegate & McDonald, Inc., P.S.*), for appellant.

*Roger K. Garrison* and *Stephen R. McCue,* for respondent.

BRACHTENBACH, J.—Two questions are presented: (1) Does the court have jurisdiction to award separate maintenance independent of a statutorily authorized action for marriage dissolution? (2) Does a guardian ad litem (GAL hereafter) have authority to seek the dissolution of the marriage of the incompetent spouse?

First, the facts. The parties were married in 1964, the third marriage for each. After a separation of about 16 months, the wife sought an order of separate maintenance. She specifically alleged that the marriage was not irretrievably broken. A GAL was appointed to represent the husband in this action. The report of the GAL, a lawyer, recommended a counter petition for dissolution, stating: "[w]ith the aid of the prenuptial agreement, further dissipation of the liquid assets of [the husband] can be prevented." At trial the wife was age 83, the husband 89.

Trial resulted in dismissal of the actions of both parties. The court held (1) that it had no subject matter jurisdiction to award maintenance absent a concomitant action for dissolution, and (2) that the GAL had no standing to seek a dissolution on behalf of the legally incompetent husband.

As to the separate maintenance action, the husband argues that the 1973 dissolution of marriage act, RCW 26.09, does not authorize separate maintenance except as a temporary measure, pending the resolution of a dissolution action. His argument is that the courts were specifically authorized to award separate maintenance by our 1949

divorce act, Laws of 1949, ch. 215, § 12, and that that power was repealed by Laws of 1973, 1st Ex. Sess., ch. 157, § 30. The husband thus concludes that a court no longer has the power to grant separate maintenance.

We hold that the superior court has jurisdiction to award separate maintenance quite apart from the pendency of a dissolution action. Our constitution vests in the courts jurisdiction of "all matters of . . . divorce . . . and for such special cases and proceedings as are not otherwise provided for." Const. art. 4, § 6.

This court established the common law remedy of separate maintenance in 1897 in *Kimble v. Kimble,* 17 Wash. 75, 83, 49 P. 216 (1897). In *Kimble* the court wisely noted that the parties may choose not to seek a divorce because of principles of conscience or religion coupled with a hope of reconciliation, and then said: "[b]ut in the meantime she must live." Even after the passage of the divorce act of 1949, the courts continued to recognize the common law remedy of separate maintenance in cases in which divorce had never been sought and the statute did not apply. *Hoffman v. Hoffman,* 57 Wn.2d 684, 359 P.2d 153 (1961) (separate maintenance denied on other grounds).

From the record it appears there are property squabbles between her side of the family and his which have made their current separation desirable. In the meantime, they both have to live. It is within the trial court's discretion to allocate the resources of each party so that they both can attempt to live within their means quite without regard to the ultimate distribution of their estates at death. At their respective ages, their needs are somewhat immediate. Given our constitutional jurisdiction and the equities of this situation, we hold that jurisdiction does lie for this action.

A difficult question is posed in determining whether a GAL has power to seek a dissolution when the legally incompetent person either rejects the suggestion that a dissolution be sought, or is not competent to express a choice realistically. Here the husband said he did not want a divorce. Yet it is clear that he was quite confused about

most subjects to which he testified. A general guardian has also been appointed for him. The record does not contain the order of appointment for either the GAL or the general guardian and neither party questions the authority of the GAL vis–a–vis the general guardian as to this issue; however, both appear to support the petition for a dissolution.

■ The GAL relies for his authority to bring this petition on RCW 11.88.090(1), which authorizes a guardian to commence and prosecute *any* suit on behalf of the incompetent. The vast majority of courts hold that a guardian has no authority to seek a divorce or dissolution. The cases are collected in Annot., 6 A.L.R.3d 681, 683–88 (1966). The collected cases often rely upon the truism that a decision to dissolve a marriage is so personal that a guardian should not be empowered to make such a choice for the incompetent. As a general proposition that rationale is valid. However, in these days of termination of life support, tax consequences of virtually all economic decisions, no–fault dissolutions and the other vagaries of a vastly changing society, we think an absolute rule denying authority is not justified nor in the public interest. To the extent that *Jones v. Minc,* 77 Wn.2d 381, 462 P.2d 927 (1969) endorsed such an absolute rule, we overrule that case.

Generally, a guardian should not determine this question for the incompetent. However, there may be circumstances in which a court may authorize a general guardian or a GAL to seek a dissolution. Unless this course of action is available, the competent party is vested with absolute, final control over the marriage. This is not equitable. The relevant situations in which such authorization may be appropriate are potentially so varied that we do not attempt to enumerate them here. *E.g., In re Marriage of Higgason,* 10 Cal. 3d 476, 516 P.2d 289, 110 Cal. Rptr. 897 (1973); *Boyd v. Edwards,* 4 Ohio App. 3d 142, 446 N.E.2d 1151, 1159 (1982). In such situations the court's primary consideration must be the best interests of the ward, although the court must also bear in mind possible legal obligations to a spouse.

In this case there is nothing in the record before this court which would warrant such an extraordinary step. The only purpose advanced by the GAL for seeking a dissolution is that such a move would prevent the dissipation of the husband's estate. However, it seems apparent from the financial evidence presented that sufficient assets exist to meet the living expenses of both parties comfortably. There must be some allegation that a dissolution is in the best interests of the ward, not just of his heirs. *See In re Jennings,* 187 N.J. Super. 55, 453 A.2d 572 (1981). However, the GAL may be able to develop such evidence on remand.

In cases in which the guardian or GAL believes a dissolution to be in the best interests of the incompetent ward, such authority must be sought specifically by a special petition for that purpose. The court must then hold a hearing to obtain evidence of what action is in the best interests of the ward. The discretion of the trial court will test these matters, again with great emphasis upon the interests of the ward and the necessities and interests of the competent spouse.

The matter is remanded for determination of separate maintenance to the wife, and for a hearing as to whether the GAL or general guardian should be authorized to file a petition for dissolution on behalf of the husband.

DOLLIVER, C.J., and UTTER, PEARSON, CALLOW, and GOODLOE, JJ., concur.

DORE, J. (concurring in part, dissenting in part)—I agree with the majority that the superior court has jurisdiction to award separate maintenance quite apart from the pendency of a dissolution action. I respectfully dissent to the majority's holding that a guardian ad litem has the power to seek a dissolution when the legally incompetent person either rejects the suggestion that a dissolution be sought, or is not competent to express a choice realistically.

This court noted in *Jones v. Minc,* 77 Wn.2d 381, 384, 462 P.2d 927 (1969) that "[i]t is generally held that a

guardian has no standing to bring an action for the divorce of his ward without specific statutory authorization. . . . To the extent that the grounds for divorce express injuries personal to the parties to the marriage, . . . such a rule is sound." (Citation omitted.) In the 16 years which have elapsed since this pronouncement, the rule remains sound and exists in practically every jurisdiction in the country.

During the intervening years between our pronouncement in *Jones* and this action, the Washington State Legislature completely revamped the dissolution law of Washington without granting a guardian the authority to bring an action for dissolution on behalf of his ward. Thus, despite our acknowledgment that a guardian lacked standing to bring a dissolution action on behalf of his ward without specific statutory authority, the Legislature did not include such authority in the newly enacted dissolution act.

The 1973 dissolution of marriage act, RCW 26.09, provides that a party petitioning for dissolution of marriage must allege that the marriage is irretrievably broken. RCW 26.09.030. Although an allegation that the marriage is irretrievably broken is all that is required to support a decree of dissolution, *In re Marriage of Little,* 96 Wn.2d 183, 192, 634 P.2d 498 (1981), this allegation remains personal to the petitioning spouse. *See, e.g., In re Marriage of Pratt,* 99 Wn.2d 905, 665 P.2d 400 (1983).

Recently, the Court of Appeals of Ohio held that the enactment of "no fault" dissolution provisions had no bearing on the continued viability of the rule.

"At the outset, it must be kept in mind that marriage is a civil contract, a personal and human relationship, as well as an institution. It cannot be created except by the consent of the parties. It cannot be dissolved except by the consent and the intelligent exercise of the will of one of the parties. *That is to say, that no matter what or how many valid grounds for divorce exist, it is only by the decision and will of the party aggrieved that an action for divorce may be brought.* Such aggrieved party may desire to condone acts that may have been committed by the opposite party. Such party may, for personal

reasons, whether social, financial or religious, or out of consideration for the welfare of children or even other members of the families involved, desire that the marriage relation continue. There are no marital offenses which cannot be condoned. It is not the marital offense in itself that works the dissolution of the marriage union. It is the will and volition of the party aggrieved that invokes the judicial process to review the wrong and grant the relief which such will and volition of the aggrieved party has decided to request."

*Boyd v. Edwards,* 4 Ohio App. 3d 142, 147, 446 N.E.2d 1151 (1982) (quoting *Shenk v. Shenk,* 100 Ohio App. 32, 33–34, 135 N.E.2d 436 (1954)). *See also* Annot., *Power of Incompetent Spouse's Guardian, Committee, or Next Friend To Sue for Granting or Vacation of Divorce or Annulment of Marriage, or To Make a Compromise or Settlement in Such Suit,* 6 A.L.R.3d 681 (1966).

The Legislature wisely recognized that fault should play no role in a dissolution proceeding. It is not a marital offense that works a dissolution of a marital union, but rather the will and volition of the party to the union which works a dissolution. That a competent spouse may inflict marital injustices on an incompetent spouse does not negate the volitional nature of a marital union. The right of the injured party to regard the bond of marriage as indissoluble because of religious affiliation or for other personal reasons is so strictly personal that such relationship should not be dissolved except with the personal consent of the aggrieved party.

The Legislature has deemed it wrong to compel a party against his will to remain married once he complies with the no–fault provisions in the marriage dissolution act. I hasten to add that it is equally wrong to compel a divorce under no–fault, when neither party desires divorce. Traditionally the right to seek a divorce is considered a strictly personal right, insofar as marriage is a personal and human relationship as well as an institution. The vagaries of a changing society have not abrogated the strictly personal nature of the marital relationship. If the guardian ad litem

has the right to maintain a dissolution action on behalf of an incompetent ward, why not also permit him the authority to effectuate a marriage on behalf of an incompetent ward. Both type actions may be in the best interests of the ward.

The common law remedy of providing separate maintenance to the spouses is sufficient protection for the incompetent spouse absent an expression of his wishes. I would hold that a guardian cannot petition for dissolution on behalf of a mentally incompetent person who has had no interval of lucidity, since the will of such a person cannot be known, and he or she may wish to condone the acts which form the basis of an irretrievably broken marriage.

## CONCLUSION

Marriage is a sacred institution. The Legislature has provided for dissolution only on condition that at least *one* party to the marriage contract must allege that the marriage is irretrievably broken. RCW 26.09.030. The majority here, by eliminating this single requirement for a divorce, amends the divorce statute by judicial fiat. This they cannot constitutionally do. I dissent.

ANDERSEN and DURHAM, JJ., concur with DORE, J.