# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| In the Matter of the Marriage of:<br><br>MARIALYCE ESSER,<br><br>                    Appellant,<br><br>and<br><br>GERALD JEROME ESSER,<br><br>                    Respondent. | No. 53648-0-II<br><br><br>UNPUBLISHED OPINION |

SUTTON, J. — Marialyce Esser (Mari) appeals the trial court's order denying her motion to dismiss this dissolution action filed by Gerald Esser.[1]  Mari argues that (1) the court erred by proceeding to trial without conducting a *Gannon*[2] pretrial hearing, (2) the court erred by excluding lay witness testimony regarding whether Gerald was incapacitated, (3) the record is not sufficient to establish that the trial court articulated an adequate basis for finding that payments by Gerald's children on his behalf were a community debt, and (4) she is entitled to an award of appellate attorney fees and costs.[3]  Gerald argues that the doctrine of abatement applies such that this appeal

---

[1] We refer to the parties by their first names and intend no disrespect.

[2] *In re Marriage of Gannon*, 104 Wn.2d 121, 702 P.2d 465 (1985) (holding that a special hearing is necessary to determine whether marriage dissolution is in the best interest of an incompetent spouse).

[3] Mari also argues that we should remand this matter to a new judge.  We do not reach this issue.

must be dismissed and he is entitled to an award of reasonable appellate attorney fees and costs as Mari's motion for discretionary review and this appeal are both frivolous.

We hold that the doctrine of abatement does not apply. Regarding Mari's arguments, we hold that (1) whether a *Gannon* hearing was required was questionable, and even assuming one was required, the trial court held an adequate hearing during trial and properly applied *Gannon*, (2) the trial court properly excluded lay witness testimony regarding whether Gerald was incapacitated, and (3) the court articulated an adequate basis based on the record for its determination that the payments by Gerald's children were a community debt. We (4) deny Mari's request for appellate attorney fees and costs and grant Gerald's request for reasonable appellate attorney fees and costs because Mari's motion for discretionary review and this appeal are both frivolous. We affirm the trial court's decree of dissolution.

## FACTS

Mari and Gerald Esser were married on June 11, 1989, and separated in September 2016. In 2014, Gerald was diagnosed with Alzheimers, and he and Mari agreed to stay married during his disease. Mari and Gerald then began having heated arguments.

In September 2016, Mari and Gerald got into a physical altercation. Later at trial, Mari testified that she told Gerald she was leaving because she was afraid if she stayed, he would kill her. Gerald's neighbor testified that Gerald left the house and went to the neighbor's house, where he told his neighbor that he could not go back to the house because he was afraid he would be killed, and he requested the neighbor call the police. The neighbor called the police, who then arrested Mari.

A.  GERALD'S CHILDREN SOUGHT LEGAL PROTECTION, A GUARDIAN WAS APPOINTED, AND CHANGES WERE MADE TO GERALD'S WILL

After the physical altercation, Gerald moved in with his daughter for a period of time. Gerald moved back into the house after having assurance that Mari would not be there, and his son then lived with him for a year.  Meanwhile, Gerald's daughter and son attempted, without success, to obtain a vulnerable adult protection order against Mari to protect Gerald.  In 2016, a Guardian Ad Litem (GAL) was appointed for Gerald upon Mari's request; Gerald signed a durable power of attorney for health care and durable power of finances.  Mari's stated purpose for seeking the GAL was to maintain the finances for herself and Gerald and to maintain control over Gerald's healthcare decisions.  Gerald said he wanted a divorce from Mari.

B.  GERALD FILED FOR DISSOLUTION

Mari filed a petition for legal separation in December of 2016.  In January 2017, the parties mediated and reached a settlement regarding the separation.  The GAL stated that Gerald was "sufficiently competent" and had the "requisite capacity" to understand and sign the settlement agreement.  Clerk's Papers (CP) at 13.  Mari and a bookkeeping services company were appointed co-attorneys-in-fact and were obligated to provide monthly accountings.  The guardianship action was subsequently dismissed.

In August 2017, Gerald filed a petition for dissolution.  Gerald was not incapacitated when he filed this petition.  Mari did not respond.  And Mari failed to produce the monthly financial reports that were required of her.

C. A COURT-APPOINTED LITIGATION GAL WAS APPOINTED

In March 2018, at Mari's request, the trial court appointed a litigation guardian ad litem (LGAL) for Gerald. The LGAL was ordered to "investigate and make a confidential report" regarding Gerald's physical and/or mental health conditions, and whether these affected his ability to make informed choices regarding the dissolution litigation. CP at 525. The LGAL reported that Gerald's dementia was mild in November 2016, but by May 2018, Gerald suffered from chronic progressive cognitive dysfunction and could not make medical, financial, or personal decisions.

In June 2018, Mari filed a motion to expand the duties of the LGAL "to include full decision-making authority on behalf of Gerald Esser with respect to all contested issues in this case." CP at 44. She also requested the case be set for trial. The court granted this motion.

The trial court found Mari in contempt numerous times for discovery violations and for her continuing failure to produce the required financial reports. The trial court sanctioned Mari after she failed to fully comply with the court's discovery orders, and it warned her that she could be limited in her evidence at trial.

D. MARI REQUESTED A SPECIAL HEARING UNDER *GANNON* RIGHT BEFORE TRIAL

Two weeks before trial, Mari filed a motion to dismiss the case, arguing that Gerald and the LGAL had failed to follow the requirements of *Gannon*, which requires a special hearing to determine whether dissolution would be in Gerald's best interest. The trial court denied this motion as untimely but ruled that the issue would be addressed at trial. Mari informed the court that she intended to bring a preliminary motion to determine whether the dissolution was in

Gerald's best interest. The court agreed that it could be determined as a preliminary motion or motion in limine at trial.

E.  MARI SOUGHT DISCRETIONARY REVIEW AND A STAY OF TRIAL DUE TO THE *GANNON* ISSUE

Three days before trial was set to begin, Mari sought discretionary review with us. The next day, Mari moved to stay the trial pending our review, which the trial court denied. She then requested we stay the trial. In response to Mari's motion for discretionary review, Gerald argued that discretionary review was moot and a waste of judicial resources as trial had not concluded. Thus, he requested attorney fees and costs for having to respond to a frivolous motion for discretionary review. We denied Mari's motion to stay the trial. The case was tried to the bench starting June 20, 2019.

F.  THE TRIAL BEGAN AND THE COURT LATER RULED ON THE *GANNON* ISSUE

The trial began with a discussion of *Gannon* and whether dissolution was in Gerald's best interest. Mari argued that her due process rights were being violated because the court was required to hold a *Gannon* hearing prior to trial, and Gerald argued that whether the court could proceed to trial without this pretrial hearing was moot. The trial court determined that resolution of this issue would be best determined in the context of the trial. The court ruled that Gerald, as the petitioner for dissolution, had the burden of proving by clear, cogent, and convincing evidence that dissolution was in his best interest.

The parties presented evidence regarding the *Gannon* issue. The trial court heard testimony regarding the domestic violence issues between the parties, as well as testimony that Mari was not properly caring for the community assets, nor providing for Gerald's health care. Gerald filed the petition for dissolution before he was deemed incompetent, unlike the petitioner in *Gannon* whose

petition was filed on his behalf after he was determined incompetent; he argued that therefore, he intended to proceed with the dissolution and that it was in his best interest.

After Gerald rested his case, Mari filed a motion for judgment of dismissal on the merits. She argued that Gerald failed to meet his burden under *Gannon* of showing that dissolution was in his best interest. That same day, Mari filed a motion for reconsideration of the court's denial of her initial motion to dismiss. The trial court denied the motion for judgment of dismissal on the merits.

Following the conclusion of trial, the trial court found that dissolution was in Gerald's best interest. The court stated:

> I think based on the evidence that the court has heard so far, there is clearly enough to continue forward with the trial and that it is in the best interest of [Gerald] based on the domestic violence the court has heard and the need for assets in order to, for him to have availability of those assets to live on.

Verbatim Report of Proceedings (VRP) at 463.

G. THE COURT EXCLUDED A LATE-DISCLOSED EXPERT AND LAY TESTIMONY ABOUT GERALD'S DEMENTIA

On the fourth day of trial, Mari sought to call an expert witness whom she had not previously disclosed. The trial court excluded the expert witness's testimony because Mari had failed to disclose this expert witness. Throughout the trial, Mari then sought to elicit testimony from lay witnesses regarding Gerald's dementia symptoms. Mari asked a managing broker who previously worked with Gerald about his experiences with Gerald, and his impression about Gerald's ability to work on real estate issues over time and whether his ability had diminished. And Mari attempted to testify about her own observations of Gerald and Gerald's family members' observations of his "infirmities." VRP at 701.

6

The trial court excluded lay witness testimony regarding Gerald's mental state because Mari had no expert testimony to corroborate the proffered lay witnesses' testimony about Gerald's mental condition and symptoms. The court also ruled that evidence Mari sought to offer regarding Gerald's mental condition at the time he filed the petition for dissolution was not relevant: "[w]hether he was incapacitated before I don't find relevant to the issue of is it in his best interest because the court makes that decision based on the fact that he's incapacitated now." VRP at 699.

## H. THE COURT FOUND THAT THE GUARDIANSHIP AND ASSISTED LIVING EXPENSES PAID FOR BY GERALD'S CHILDREN WERE A COMMUNITY DEBT AND ORDERED HIS CHILDREN TO BE REIMBURSED FOR THESE PAYMENTS

The trial court awarded Mari all the community properties except one. The court ordered that one of the community properties be sold and the proceeds used to pay certain community and separate debts, including debts for Gerald's guardianship fees and assisted living costs, with the remainder being divided between the parties. The court relied on Gerald's children's testimony that they paid for Gerald's guardianship fees in the amount of $36,513.95 and assisted living costs in the amount of $66,951.34, as well as various additional expenses in the amount of $4,906.17, for a total payment of $108,371.46. Both children requested reimbursement; Gerald also requested this in his trial brief and in his closing statement.

Mari did not object to or make any argument as to the trial court's finding that these payments made on behalf of Gerald were a community debt.

7

I. The Court Entered The Final Decree And Denied Reconsideration[4]

The trial court entered its final decree of dissolution on August 22, 2019. Mari's counsel, Denton, objected, arguing that she was not ready for entry of the final orders.

Denton filed an incomplete motion for reconsideration after the ten-day deadline had passed. The next week, Denton also filed a motion asking the trial court to reconsider its entry of a final order over her objection. Denton argued for the first time that the community should not be required to reimburse Gerald's children.

Once final orders were entered post-trial, we converted the discretionary review to an appeal by right. Order Converting Notice of Discretionary Review to a Notice of Appeal (Sept. 18, 2019). Gerald renewed his request for attorney fees and costs. We denied the motion without prejudice and held that Gerald could renew his request in his appellate brief. Gerald died December 6, 2019, while this appeal was pending.

ANALYSIS

I. ABATEMENT

Gerald's counsel argues that we cannot grant Mari's requested relief because Gerald died while this appeal was pending. We disagree.

A dissolution decree may be vacated upon the death of a party, thereby abating, or ending, the action. *In re Marriage of Fiorito*, 112 Wn. App. 657, 662, 50 P.3d 298 (2002). If a party on appeal dies while the appeal is pending in a dissolution proceeding, and the other party is

---

[4] Mari does not assign error to any of the trial court's findings of fact, so they are verities on appeal. *Herring v. Pelayo*, 198 Wn. App. 828, 833, 397 P.3d 125 (2017).

challenging the property provisions of a final divorce decree, abatement does not apply. *In re Marriage of Tulleners*, 11 Wn. App. 2d 358, 368, 453 P.3d 996 (2019).

Here, because this case is on appeal and Mari is challenging a decree of dissolution that includes a division of property, the rule of abatement does not apply. Thus, Gerald's argument fails.

## II. *GANNON* HEARING WAS HELD

Mari argues that the trial court erred by proceeding to trial without first conducting a pretrial *Gannon* hearing.[5] We hold that whether a *Gannon* hearing was required here is questionable, but even assuming one was required, the trial court conducted a *Gannon* hearing during trial and correctly applied *Gannon* after considering the evidence at trial.

A court is required to appoint a GAL "[w]hen an incapacitated person is a party to an action." RCW 4.08.060. The trial court also has inherent authority to appoint a GAL for a litigant in a civil matter upon a finding of incompetency. *Vo v. Pham*, 81 Wn. App. 781, 784, 916 P.2d 462 (1996). In *Gannon*, the parties were legally separated and the wife sought separate spousal maintenance. At the time *Gannon* was decided, most courts around the country would not allow a guardian to seek dissolution on behalf of an incompetent person. 104 Wn.2d at 123. Our Supreme Court stated that

> Generally, a guardian should not determine this question for the incompetent. However, there may be circumstances in which a court may authorize a general guardian or a GAL to seek a dissolution. Unless this course of action is available, the competent party is vested with absolute, final control over the marriage. This is not equitable. The relevant situations in which such authorization may be appropriate are potentially so varied that we do not attempt to enumerate them here. In such situations the court's primary consideration must be the best

---

[5] Mari does not challenge the trial court's finding that dissolution was in Gerald's best interest.

interests of the ward, although the court must also bear in mind possible legal obligations to a spouse.

*Gannon*, 104 Wn.2d at 124 (internal citations omitted).

In cases in which the guardian or GAL believes a dissolution to be in the best interests of the incompetent ward, such authority must be sought specifically by a special petition for that purpose. The court must then hold a hearing to obtain evidence of what action is in the best interests of the ward. The discretion of the trial court will test these matters, again with great emphasis upon the interests of the ward and the necessities and interests of the competent spouse.

*Gannon*, 104 Wn.2d at 125.

Mari, who raised the *Gannon* issue only two weeks before trial, argues that our Supreme Court held in *Gannon* that the guardian must file a special petition in every dissolution case in which one of the parties has a guardian appointed by the court, and the court must hold a pretrial *Gannon* hearing. We disagree. *Gannon* provides that a trial court may allow a guardian to pursue a dissolution on behalf of a person who is incapacitated only when the court finds it is in the best interest of that person to pursue dissolution, taking into consideration the competent spouse's legal obligations. 104 Wn.2d at 125.

Further, whether a *Gannon* hearing was required here is questionable. In this case, Gerald filed the petition for dissolution *before* he was deemed incompetent, unlike the petitioner in *Gannon* whose petition was filed on his behalf after he was determined incompetent. The *Gannon* procedure applies where a guardian seeks to petition for dissolution on behalf of a ward deemed incompetent in order for the court to make a preliminary determination as to whether the dissolution should proceed because it is in the ward's best interest. 104 Wn.2d at 125. Here, Gerald's intentions to seek dissolution were clear before he became incompetent.

Even assuming a *Gannon* hearing was required, the trial court held one concurrently with the trial. We are not persuaded by Mari's argument that there is a strict timing required for when a court must hold a *Gannon* hearing. Thus, we hold that even if a *Gannon* hearing was required here, the trial court did hold a *Gannon* hearing and properly applied *Gannon* to the facts of this case.

III. THE COURT PROPERLY EXCLUDED LAY WITNESS TESTIMONY OF GERALD'S INCAPACITY

Mari argues that the trial court erred by excluding evidence regarding Gerald's incapacity at the time he filed the petition for dissolution. We hold that the lay witness testimony of Gerald's incapacity was not relevant, and thus, the trial court properly excluded it.

We will reverse a trial court's evidentiary rulings only upon a showing of abuse of discretion. *Bengtsson v. Sunnyworld Int'l, Inc.*, 14 Wn. App. 2d 91, 99, 469 P.3d 339 (2020). "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). Further, even if a trial court's evidentiary rulings were erroneous, the appellant must also show that the error was prejudicial. "Error will not be considered prejudicial unless it affects, or presumptively affects, the outcome of the trial." *Brown v. Spokane County Fire Prot. Dist. No. 1*, 100 Wn.2d 188, 196, 668 P.2d 571 (1983).

Relevant evidence is generally admissible, while irrelevant evidence is generally inadmissible. ER 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401.

A lay witness may testify as to his or her opinions only if they are "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge." ER 701. ER 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, training, or education, may testify thereto in the form of an opinion or otherwise." Under ER 702, specialized knowledge or experience is required to discern whether Gerald had an incapacity.

Here, the trial court did not allow Mari's lay witnesses to testify about Gerald's incapacity and related behavior because it ruled that the testimony was irrelevant without corroboration by expert testimony. The court also excluded Mari's expert witness testimony for late disclosure, which ruling Mari does not challenge on appeal. The court ruled that it could not determine Gerald's incapacity based on the lay witness testimony alone.

A reasonable lay person with general experience does not have knowledge from which to rationally diagnose a person's incapacity. The court's exclusion was proper because the lay witnesses could not opine as to Gerald's mental condition in the absence of corroborating expert testimony. ER 701, 702. Therefore, their testimony was not relevant. ER 401.

Because the evidence from the lay witnesses was not relevant without expert testimony, we hold that the trial court properly excluded the lay witnesses' testimony regarding whether Gerald was incapacitated at the time he filed his petition for dissolution.

## IV.  THE COURT ARTICULATED AN ADEQUATE BASIS FOR  FINDING THAT PAYMENTS BY GERALD'S CHILDREN ON HIS BEHALF WERE A COMMUNITY DEBT

Mari argues that based on the record, the trial court erred by ordering her to pay $47,862.70 to Gerald's children without articulating an adequate basis for its determination that this amount was a community debt.[6]  We hold that the record is sufficient for our review and the trial court did articulate an adequate basis when it characterized the payments by Gerald's children in the correct amount of $108,371.46 as a community debt.

In a dissolution proceeding, the findings of fact and conclusions of law must be sufficient "to suggest the factual basis for the ultimate conclusions." *Lawrence v. Lawrence*, 105 Wn. App. 683, 686, 20 P.3d 972 (2001); CR 52.  "A court is not required to make findings in regard to every item of evidence introduced in a case, but it is necessary that it make findings of fact concerning all of the ultimate facts and material issues." *Wold v. Wold*, 7 Wn. App. 872, 875, 503 P.2d 118 (1972).

Here, the trial court ordered that "the following shall be paid prior to the division of the net proceeds to the parties: . . . [a]ny and all care and living expenses incurred for [Gerald] by [Gerald's children] for July 2019 and August 2019."  CP at 327.  The court's determination was based on testimony by Gerald's children that they paid the guardianship and assisted living expenses for him after Mari failed to adequately provide for his needs.  The court was not required to enter a written finding for every single issue.  *Wold*, 7 Wn. App. at 875.

---

[6] Mari claims the total payment amount is $47,862.70, but that is not correct as written in the final dissolution order.  *See* CP at 326.

We hold that based on this record, the trial court articulated an adequate basis for this finding.

## V. APPELLATE ATTORNEY FEES AND COSTS

Both parties request an award of attorney fees and costs on appeal, and Gerald also requests fees for having to respond to the motion for discretionary review. We deny Mari's request and grant Gerald's request for reasonable appellate attorney fees and costs because the motion for discretionary review and the appeal are both frivolous.

RAP 18.1(a) authorizes a party to recover reasonable attorney fees and costs so long as the party "request[s] the fees or expenses." The party must do so in a separate section of his or her opening brief. RAP 18.1(b).

We may award attorney fees and costs based on the parties' financial resources. RCW 26.09.140. "In considering the financial resources of both parties, the appellate court balances the needs of the requesting party against the other party's ability to pay." *In re Marriage of Kaplan*, 4 Wn. App. 2d 466, 488, 421 P.3d 1046 (2018).

We may order a party who files a frivolous appeal "to pay terms or compensatory damages to any other party who has been harmed." RAP 18.9(a). "Appropriate sanctions may include, as compensatory damages, an award of attorney fees and costs to the opposing party." *Yurtis v. Phipps*, 143 Wn. App. 680, 696, 181 P.3d 849 (2008). An appeal is frivolous where "it presents no debatable issues and is so devoid of merit that there is no reasonable possibility of reversal." *Carrillo v. City of Ocean Shores*, 122 Wn. App. 592, 619, 94 P.3d 961 (2004). We consider the record as a whole to determine whether an appeal is frivolous. *In re Marriage of Tomsovic*, 118 Wn. App. 96, 110, 74 P.3d 692 (2003). The fact that an appeal is ultimately unsuccessful is not

dispositive of whether it is frivolous, and we resolve doubts in favor of the appellant. *Tomsovic*, 118 Wn. App. at 110.

There is no evidence in the record to establish that Mari is unable to afford paying for her attorney costs and fees. Mari received all of the community properties except one. Mari asserts that she has filed for bankruptcy, but there is nothing in the record to support this assertion. Therefore, we deny Mari's request for attorney fees and costs.

We award Gerald his reasonable appellate attorney fees and costs because Mari's motion for discretionary review and this appeal are entirely devoid of merit. There is no case law to support Mari's assertion that a special petition was required in this case. And even if a *Gannon* hearing were required here, the trial court did hold a *Gannon* hearing on the issue as part of the trial. Mari's other arguments are similarly devoid of merit, and there is no reasonable chance of reversal. *Carrillo*, 122 Wn. App. at 619.

Accordingly, we grant Gerald's request for an award of reasonable appellate attorney fees and costs for responding to the motion for discretionary review and this appeal.

No. 53648-0-II

CONCLUSION

We affirm the trial court's decree of dissolution, grant Gerald's request for an award of reasonable appellate attorney fees and costs, and deny Mari's request.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

, C.J.

LEE, C.J.

WORSWICK, J.

16